**Roger L. EWART, Fiduciary and Transferee of the Assets of the Estate of Blanche L. Ewart, Deceased, Transferor, Petitioner-Appellant,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 86–1050.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 26, 1987.

Decided March 23, 1987.

Vincent J. Falcone (argued), Cuyahoga Falls, Ohio, for petitioner-appellant.

Fred T. Goldberg, Jr., Chief Counsel, Washington, D.C., Michael L. Paup, Roger M. Olsen, David English Carmack, Jane S. Kimball (argued), for respondent-appellee.

Before JONES and GUY, Circuit Judges; EDWARDS, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Roger L. Ewart (the taxpayer) appeals from a decision of the United States Tax Court holding him liable as a transferee of the assets of the Estate of Blanche L. Ewart (the estate) under section 6901(a)(1)(A)(ii) of the Internal Revenue Code of 1954, 26 U.S.C. [I.R.C.] § 6901(a)(1)(A)(ii) (1982). *See Ewart v. Commissioner,* 85 T.C. 544 (1985). For the reasons set forth below, we affirm.

The following facts are taken largely from the Tax Court's opinion. Blanche L. Ewart died on April 30, 1978, and her will was probated in the Ohio courts. Taxpayer and his brother, John L. Ewart (John), were the sole beneficiaries of the will and were appointed coexecutors of the estate. Beryl H. Haught, Jr. was the attorney representing the estate. Neither taxpayer nor John filed a Form 56, Notice of Fiduciary Capacity, with the IRS as required by I.R.C. § 6903(b) (1982), and 26 C.F.R. § 301.-6903–1 (1986).

Under the will, both taxpayer and John received specific parcels of real estate. On January 29, 1979, a United States Estate Tax Return was filed on behalf of the estate. Taxpayer and John were identified in that return as "[d]eceased's personal representative or persons in possession of property." This return was signed by John and Haught, but not by the taxpayer. It listed the value of the parcel of property devised to taxpayer as $60,000, and the value of the property devised to John as $165,000.

The following day, January 30, 1979, an inventory and appraisal of the estate was filed with the state probate court. Again, the values of the properties were listed as $60,000 and $165,000 respectively; and again, the document was signed by John but not by taxpayer. Taxpayer filed an objection to the inventory and appraisal with the probate court on February 8, 1979, but later withdrew it when he and John executed the following agreement:

WHEREAS various differences have arisen between the said parties as to the valuation of the assets in said estate....

....

3. If at any time in the future the Blanche L. Ewart estate is re-appraised to include the buildings or raise the valuation of the 86 acres willed to John L. Ewart, he must pay this increase in taxes, interest or penalties when due on this re-appraisal.

4. If at any time in the future the Blanche L. Ewart estate is re-appraised to raise the valuation of the 30 acres willed to Roger L. Ewart, he must pay this increase in taxes, interest or penalties when due on this re-appraisal.

The probate court entered an order approving the inventory and appraisal on February 19, 1979, and taxpayer and John simultaneously received the property devised to them the following day. No consideration was paid to the estate by either taxpayer or John for this property. The February 20 distribution of real property exhausted the assets of the estate.

On May 15, 1979, John sold the parcel of property devised to him for $212,000. This parcel had been reported to both state and federal taxing authorities as valued at $165,000. Two months later, on June 12, 1979, a Form 1041, U.S. Fiduciary Income Tax Return, was filed on behalf of the estate. John's name was listed as estate fiduciary and John alone signed in that capacity. Haught also signed as preparer. Taxpayer did not sign the form and his name was not listed as a fiduciary or coexecutor.

The IRS audited the estate tax return and increased the value of the estate property devised to John from $165,000 to $212,000. A Form 890, Waiver of Restrictions on Assessment and Collection of Deficiency and Acceptance of Overassessment-Estate and Gift Tax, was executed on be-

half of the estate on January 26, 1980, by John and Haught pursuant to I.R.C. § 6213(d) (1982). This had the effect of consenting to an immediate assessment of a $14,637.55 estate tax deficiency owing by the estate, and constituted a waiver of the availability of the Tax Court as a forum for contesting the merits of the deficiency. It did not preclude any subsequent suit for refund pursuant to *id.* § 7422, by the estate or taxpayers whose liability is derivative from the estate. Unfortunately, at some point prior to the filing of the instant suit, John filed for personal bankruptcy.

On January 23, 1983, the taxpayer executed a Form 977, Consent to Extend Time to Assess Liability at Law or in Equity for Income, Gift, and Estate Tax Against a Transferee or Fiduciary, extending the period under which he would be liable for an assessment as a transferee until January 30, 1984. On June 23, 1983, the Commissioner mailed a notice of liability to the taxpayer stating that he was liable for the estate tax deficiency as both a fiduciary and transferee of the estate under *id.* §§ 6324(a)(2) and 6901(a)(1)(A)(ii) respectively. The amount of liability was $14,637.55 principal deficiency plus $3650.39 as an addition to tax under *id.* § 6651(a)(3) and interest. The taxpayer thereafter filed a petition with the Tax Court seeking a redetermination of the asserted liability.

The Commissioner filed his answer to the taxpayer's petition and moved for summary judgment on the issue of taxpayer's liability solely as a transferee under section 6901. Taxpayer filed a cross-motion for summary judgment with respect to his liability as both a fiduciary and transferee. The Tax Court ultimately denied the taxpayer's motion and granted the Commissioner's motion. Taxpayer appeals from this judgment. He argues in this court that the Form 890 waiver executed by his brother John was invalid and, alternatively, that the Tax Court erred in finding him liable as a transferee under section 6901(a)(1)(A)(ii).

## I.

Taxpayer contends that the Form 890 waiver signed by John constituted a confession of judgment against the estate at a time when the estate was insolvent and was therefore an act outside the ordinary course of administration of the estate. Since John was bankrupt, he further argues that the waiver was, in effect, a confession of judgment against taxpayer personally as the only other beneficiary and coexecutor. Therefore, taxpayer maintains, Ohio fiduciary law requires that the waiver be executed by both coexecutors in order to be valid. The flaws in this argument are as follows. First, although taxpayer was in fact a coexecutor of the estate in probate court, that does not necessarily mean that his signature is required on federal estate tax documents. *See Darcy v. Commissioner,* 26 B.T.A. 841, 849 (1932), *aff'd on other grounds,* 66 F.2d 581 (2d Cir.1933); *Bartlett v. Commissioner,* 16 B.T.A. 510, 513 (1929) (the lawful act of one executor binds the estate). Further, the term "executor" under I.R.C. § 2203 (1982) is a federal law concept. *DeNiro v. United States,* 561 F.2d 653, 657 (6th Cir. 1977). Since the IRS was never properly informed of taxpayer's status as a coexecutor as required by I.R.C. § 6903(b), it had no way of knowing that taxpayer was a fiduciary of the estate. All the forms and returns that were filed by the estate were signed by John alone or by John and Haught. Taxpayer was only listed in one of those forms as "personal representative *or* perso[n] in possession of property." (Emphasis added.) If, through taxpayer's own nonfeasance, the IRS was not aware that he was a fiduciary, the IRS cannot and should not be bound by any possible state law requirements of his specific assent.

The second main flaw in taxpayer's argument is that, even assuming that the validity of the waiver is influenced by Ohio law, the execution of the Form 890 waiver was, under state law, an act in the ordinary course of the administration of the estate. *See In re Haggerty's Estate,* 128 N.E.2d 680, 685 (Ohio Prob.Ct.1955). The payment of lawful taxes on the estate necessarily encompasses the acknowledgement of estate tax liability. Taxpayer does not contend that the estate tax returns signed by

John alone are nonbinding. The fact that the estate was insolvent at the time the Form 890 acknowledgement of deficiency was executed does not necessarily change this result, especially where taxpayer, as coexecutor, did not specifically and contemporaneously object to the waiver. Again, if he contends that his failure to object was because he was unaware of the proposed waiver, that is his own fault for failing to notify the IRS of his status as a fiduciary.

The other points argued by taxpayer on this first issue are equally meritless. We hold that the Form 890 waiver, executed by John without the knowledge or consent of taxpayer, was valid and binding on the estate.

## II.

Turning to the substantive issue, it is clear that I.R.C. § 6901(a) does not create transferee liability. It merely provides the procedure whereby the IRS may pursue its claim against a transferee. *Commissioner v. Stern*, 357 U.S. 39, 42, 78 S.Ct. 1047, 1049, 2 L.Ed.2d 1126 (1958). "Whether a transferee is liable for unpaid taxes depends on state law." *John Ownbey Co. v. Commissioner*, 645 F.2d 540, 543 (6th Cir. 1981). In other words, the government must look to Ohio's fraudulent transfer law for its rights as a defrauded creditor of the transferor-estate. *See Delia v. Commissioner*, 362 F.2d 400, 402 (6th Cir.1966).

██ Ohio Rev.Code § 1336.04 provides: Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

In this case, the simultaneous conveyances of the parcels of property to taxpayer and brother John on January 20, 1979, were made without consideration and left the estate bare. The fact that the IRS later determined that there was a deficiency in the estate taxes means that the January 20 transfers also left the estate insolvent *ab initio*. *See id.* § 1336.02. The practical effect of these statutes in the present case

is that, by accepting the devised property in a transaction that closes out the estate, the taxpayer-transferee becomes a guarantor up to the amount of the transfer ($60,000) for any legitimately determined estate tax deficiencies.

Taxpayer takes issue with the apparent inequity of this result. First, he argues that since John's property "caused" the deficiency, the IRS can only pursue its remedies against his property or interests. While that may have been the intended effect of the agreement entered into between taxpayer and his brother, the IRS is not bound by that agreement and that result simply does not obtain under the law. The deficiency is the primary liability of the estate, regardless of the parcel-specific origin. Under Ohio law, the estate must liquidate any and all real property, if necessary, to satisfy its debts. *Id.* § 2127.10. This is certainly true where the debt is in the nature of federal estate taxes. Under the model fraudulent transfer statute as enacted by the State of Ohio, read in conjunction with I.R.C. § 6901(a)(1), that obligation follows the transfer to the beneficiaries under certain conditions. In this case, since the transfer was without consideration and thereby rendered the estate insolvent, the transferee-beneficiary becomes derivatively liable for the estate tax deficiency. Intent to defraud need not be separately shown.

Taxpayer also attempts to argue that he does not fall within the fraudulent conveyance statute because the transfer of property to him, as opposed to the transfer to John, vested on his mother's death. Thus, he contends, the estate did not become insolvent at the moment of the transfer to him. The factual basis of this argument is wedded to the theory that the deficiency follows the parcel rather than the estate itself. We have already rejected this argument as a matter of federal law and find it equally meritless under state law.

We concede that charging the deficiency against taxpayer's inheritance as opposed to John's is somewhat troubling. To the extent that John may have intentionally undervalued the property he was to re-

ceive, taxpayer is at least culpable for his own nonfeasance. He was named an executor of his mother's estate but apparently did not participate in its administration. He was at least concerned about the inventory and appraisal prepared by John, but agreed not to contest it in return for an agreement that John would pay any increased taxes due from the undervaluation of his own property when called upon. Unfortunately, this agreement is ineffective as against the IRS and may now be worthless against John because of his bankruptcy.

In accordance with the foregoing discussion, the judgment of the Tax Court is AFFIRMED.