T.C. Memo. 1998-25


UNITED STATES TAX COURT


SHERMAN R. SOLAAS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11666-95.                    Filed January 21, 1998.


<u>Greg L. Eriksen</u> (specially recognized), for petitioner.

<u>Irene S. Carroll</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined that petitioner is liable as a transferee of Kemp Bros., Inc. (KBI), for deficiencies in income tax, additions to tax, and penalties owed by KBI as follows:

| | | Additions to Tax | | | Penalties |
| Year | Deficiency | Sec. 6651(a)(3) | Sec. 6653(a)(1)(A) | Sec. 6661(a) | Sec. 6662(a) |
|---|---|---|---|---|---|
| 1986 | $110,582.82 | --- | $10,882 | --- | --- |
| 1987 | 175,819.00 | --- | 8,791 | --- | --- |
| 1988 | 80,136.00 | $4,808.16 | --- | $4,007 | --- |
| 1989 | 121,302.00 | --- | --- | --- | $6,065 |
| 1991 | 0.00 | --- | --- | --- | --- |

Respondent also asserted in the notice of transferee liability that KBI owed, as additional amounts, the following:

| Item | Year | Amount |
|---|---|---|
| Unpaid lien fees: | 1986 | $14.79 |
| Interest refunded in error: | 1987 | 1,502.90 |
| Assessed interest: | | |
| | 1986 | 188,884.77 |
| | 1987 | 120,203.59 |
| | 1988 | 54,205.74 |
| | 1989 | 45,832.50 |
| | 1991 | 10,142.76 |
| Accrued interest to March 15, 1995: | | |
| from Oct. 5, 1993 | 1986 | 51,229.73 |
| from Oct. 5, 1993 | 1987 | 36,467.28 |
| from Oct. 5, 1993 | 1988 | 5,472.83 |
| from Oct. 5, 1993 | 1989 | 25,206.89 |
| from Feb. 7, 1995 | 1991 | 92.95 |
| Accrued addition to tax for failure to pay: | | |
| | 1986 | 12,096.91 |
| | 1987 | 15,823.71 |
| | 1988 | 12,884.12 |
| | 1989 | 10,917.18 |
| | 1991 | 92.95 |

KBI's total tax liability was $1,113,471.58; however, the unpaid balance was $943,187.03. The issue for decision is whether petitioner is liable as a transferee under section 6901[1] for (1)

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

petitioner's 1988 increase in salary from KBI, and (2) amounts KBI loaned petitioner.[2]

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.

KBI was a California corporation with its principal place of business at 6321 South Hoover Avenue, Whittier, California. KBI was a general contractor in the construction industry. KBI's gross sales from 1989, 1990, 1991, and 1992 were $30,491,534, $23,006,897, $22,239,334, and $18,831,235, respectively. KBI ceased to operate sometime during middle to late 1993.

From 1977 through 1993, petitioner (Mr. Solaas) was the president and sole shareholder of KBI. Mr. Solaas actively participated in the company's projects--he arrived early to work, spent time with the estimating department and project management, visited construction sites, and worked on marketing KBI.

---

[2] On brief, respondent argues for the first time that KBI's purchase of a one-third interest in a condominium in Mexico that KBI used to entertain clients was a transfer by KBI to Mr. Solaas. Generally, we do not consider issues that are raised for the first time at trial or on brief. Foil v. Commissioner, 92 T.C. 376, 418 (1989), affd. 920 F.2d 1196 (5th Cir. 1990); Messer v. Commissioner, 52 T.C. 440, 455 (1969), affd. 438 F.2d 774 (3d Cir. 1971). This matter was not argued until briefing, therefore we do not consider it to be before the Court.

KBI paid Mr. Solaas, John C. Espino (Mr. Espino), and Larry C. Graham (Mr. Graham), officers of KBI, the following salaries:

| Year | Mr. Solaas | Mr. Espino | Mr. Graham |
|------|-----------|-----------|-----------|
| 1987 | $156,000 | $69,566 | $65,738 |
| 1988 | 203,980 | 73,653 | 68,525 |

Mr. Solaas decided how much KBI paid Mr. Espino, Mr. Graham, and himself.

Parr Contracting Co. (PCC) was a construction contractor similar in size to KBI--it averaged between $20 and $35 million in gross sales per year. From 1986 through 1989, PCC paid its CEO between $350,000 and $500,000. Auerbach Construction, Inc. (ACI), was a construction contractor similar in size to KBI--it averaged between $20 and $25 million in gross sales per year. In 1989, ACI paid its president and CEO approximately $250,000.

Several times from 1988 until 1992, KBI loaned various amounts of money to Mr. Solaas. KBI recorded these loans on its financial statements as accounts receivable from Mr. Solaas. Mr. Solaas determined the amounts of these loans. Between September of 1989 and December of 1992, Mr. Solaas repaid $88,000 of the money KBI loaned to him.

As of February of 1993, KBI's loan account analysis listed the amount of the loans outstanding to Mr. Solaas as totaling $911,073.15. After February of 1993, KBI did not loan Mr. Solaas any money. On March 30, 1994, the amount of KBI's loans outstanding to Mr. Solaas totaled $1,011,340.

In 1990, the Internal Revenue Service (IRS) began auditing KBI.  KBI and the Examination Division of the IRS could not resolve the tax liability; so, in July of 1991, KBI filed a protest with the Appeals Office of the IRS.  The Appeals Office and KBI resolved the matter, and on October 4, 1993, the IRS assessed corporate income tax deficiencies, additions to tax, penalties, and interest for 1986 through 1989 against KBI as follows:

| Year | Tax Assessed | Additions to Tax | Penalties | Interest[1] |
|------|------|------|------|------|
| 1986 | $217,629 | $10,882 | --- | $188,875.56 |
| 1987 | 175,819 | 8,791 | --- | 120,203.59 |
| 1988 | 80,136 | 4,007 | --- | 44,337.10 |
| 1989 | 121,302 | --- | $6,065 | 45,986.62 |

[1] Interest to Oct. 4, 1993.

Additionally, on December 20, 1993, the IRS assessed corporate income tax deficiencies and interest for 1990 and 1991 against KBI as follows:

| Year | Tax Assessed | Interest[1] |
|------|------|------|
| 1990 | $211,342 | $54,069.80 |
| 1991 | 77,442 | 10,695.95 |

[1] Interest to Dec. 20, 1993.

Sometime after March 30, 1994, the IRS took action to collect KBI's unpaid corporate income taxes.  The IRS seized all of KBI's assets it could locate with the exception of KBI's assets located in Mexico.

The IRS is the only known unpaid creditor of KBI.

OPINION

Section 6901(a)(1)(A) authorizes the assessment of transferee liability in the same manner as the taxes in respect of which the liability was incurred.  This provision does not create a new liability; it merely provides a remedy for enforcing the existing liability of the transferor.  Coca-Cola Bottling Co. v. Commissioner, 334 F.2d 875, 877 (9th Cir. 1964), affg. 37 T.C. 1006 (1962); Mysse v. Commissioner, 57 T.C. 680, 700-701 (1972). The Commissioner has the burden of proving all the elements necessary to establish the taxpayer's liability as a transferee except for proving that the transferor was liable for the tax. Sec. 6902(a); Rule 142(d).

The substantive question of whether a transferee is liable for the transferor's obligation and the extent of his liability depends on State law.  See Commissioner v. Stern, 357 U.S. 39, 45 (1958); Adams v. Commissioner, 70 T.C. 373, 389 (1978), affd. without published opinion 688 F.2d 815 (2d Cir. 1982).  All the transfers in the instant case occurred in California; hence, California law governs.  Adams v. Commissioner, supra at 390. Under California law, a person is liable as a transferee to the extent of the value of transferred assets when such assets are fraudulently conveyed to him.  Pierce v. Commissioner, 61 T.C. 424, 432 (1974); cf. Kuzmicki v. Nelson, 225 P.2d 233 (Cal. Dist. Ct. App. 1950).

In 1986, California adopted the Uniform Fraudulent Transfer Act (UFTA) which applies to transfers made or obligations incurred on or after January 1, 1987.  Cal. Civ. Code sec. 3439.12 (West 1997).  All the transfers that respondent alleges are fraudulent took place after 1987.  Accordingly, the UFTA applies.

California Civil Code section 3439.04 provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation incurred, if the debtor made the transfer or incurred the obligation as follows:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.
>
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> > (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> >
> > (2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

California Civil Code section 3439.05 provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor

was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Section 3439.04(a) relates to actual fraud, whereas sections 3439.04(b) and 3439.05 relate to constructive fraud.

Mr. Solaas' Salary

1. Actual Fraud

Respondent contends that the amount of the increase in Mr. Solaas' salary from 1987 to 1988 was actual fraud on KBI's creditors. Respondent points out that (1) KBI increased Mr. Solaas' salary by 30 percent while during that same time it increased other officers' salaries by only 6 percent, and (2) Mr. Solaas determined the salary KBI paid him. Mr. Solaas argues that the salary KBI paid him in 1988 was reasonable.

For the Court to find actual fraud, Mr. Solaas must have actually intended to hinder, delay, or defraud any of KBI's creditors. Cal. Civ. Code sec. 3439.04(a). Respondent concedes that the increased salary by itself does not indicate that Mr. Solaas had the intent to hinder, delay, or defraud KBI's creditors. Respondent, however, argues that the "unwarranted increase in salary", when considered along with the other transfers KBI made to Mr. Solaas, somehow amounts to actual fraud.

In 1988, KBI paid Mr. Solaas a salary that was comparable to similarly positioned officers and executives at similar

companies.  Respondent presented no persuasive evidence that Mr.
Solaas' salary was unreasonable.  After considering all the facts
and circumstances, we hold that the salary KBI paid to Mr. Solaas
was reasonable and was not actual fraud on KBI's creditors.

   2.  Constructive Fraud

   Respondent argues that Mr. Solaas did not give reasonably
equivalent value for the amount of increase in salary from 1987
to 1988.[3]  Mr. Solaas argues that he gave reasonably equivalent
value in exchange for the salary KBI paid him in 1988 and that
respondent has failed to carry the burden of proof because
respondent produced no evidence of reasonable compensation.

   For the Court to find constructive fraud, KBI must not have
received reasonably equivalent value in exchange for the transfer
it made to Mr. Solaas (the salary it paid him).  Cal. Civ. Code
secs. 3439.04(b), 3439.05.  In general, what constitutes
"reasonably equivalent value" under the UFTA must be determined
from the standpoint of the transferor's creditors.  In re
Prejean, 994 F.2d 706, 708 (9th Cir. 1993).

   Respondent points out that Mr. Solaas alone determined the
salary KBI paid him and that the increase in his salary from 1987
to 1988 was five times greater than the increase to the other

---

   [3]  Respondent concedes that KBI received reasonably
equivalent value for $156,000 of the $203,980 salary it paid to
Mr. Solaas in 1988.

officers' salaries.  Respondent argues that there was no apparent reason why Mr. Solaas gave himself a large increase, that Mr. Solaas offered no explanation for the difference in increases among the officers' salaries, and, therefore, Mr. Solaas did not give reasonably equivalent value for the increase in his salary. This argument is unconvincing.  We have already found that the salary KBI paid Mr. Solaas was reasonable.  Therefore, we hold that the salary KBI paid Mr. Solaas was not constructive fraud on KBI's creditors.

The Loans

    1.  KBI's Loans to Mr. Solaas

On brief, respondent argues for the first time that the loans KBI made to Mr. Solaas were something other than loans; i.e., respondent refers to KBI's loans to Mr. Solaas as "alleged loans".  In the notice of transferee liability and answer, however, respondent concedes that KBI loaned Mr. Solaas money.

    2.  Actual Fraud

Respondent contends that the loans to Mr. Solaas from 1988 through 1992 constitute actual fraud on KBI's creditors.  Mr. Solaas argues that respondent has failed to prove that the loans to him constitute actual fraud on KBI's creditors.

For the Court to find actual fraud, Mr. Solaas must have actually intended to hinder, delay, or defraud any of KBI's creditors.  Cal. Civ. Code sec. 3439.04(a).  Respondent suggests

that payments Murray Company (MC), an unrelated entity, made to KBI to decrease the amount outstanding on KBI's loan to Mr. Solaas and KBI's repayments to MC a few days later (the MC transactions) mulcted banks and bonding companies by misrepresenting KBI's financial status.  Respondent points to the following:  (1) MC made all of its payments to KBI just before Steven Wright, KBI's accountant, prepared KBI's financial statements and midyear reports; (2) KBI used the financial statements and midyear reports to gain lines of credit from banks and to obtain bonding for its construction work; and (3) the MC transactions reduced the amount of debt listed on the financial statements and midyear reports as due from Mr. Solaas and increased the amount of stated cash on hand shown on the financial statement.

    We are not persuaded by respondent's argument.  First, MC was an independent, unrelated third party.  Respondent presented no evidence that Mr. Solaas or KBI controlled, or was in any way involved with (other than in the MC transactions), MC.  Second, the MC transactions were not transfers KBI made to Mr. Solaas; the loans are the alleged transfers KBI made to Mr. Solaas.  Mr. Solaas personally never received any money from KBI or MC from the MC transactions.  Respondent has produced no persuasive evidence that KBI loaned money to Mr. Solaas with the intent to defraud any of KBI's creditors.

Respondent also claims that KBI intended to hinder and/or delay payment to the IRS. Respondent points to the fact that KBI paid all of its creditors other than the IRS. Under California law, the preference of one creditor over another is not generally a fraudulent conveyance. See Wyzard v. Goller, 28 Cal. Rptr. 2d 608 (Cal. Ct. App. 1994). Respondent's argument is one of preference of one creditor over another and thus fails to convince us that KBI intended to hinder or delay payment to the IRS.

Respondent has failed to prove that Mr. Solaas intended to hinder, delay, or defraud any of KBI's creditors by having KBI loan him money. We hold that the loans KBI made to Mr. Solaas were not actual fraud on KBI's creditors.

3. Constructive Fraud

Respondent argues that Mr. Solaas did not give reasonably equivalent value to KBI for the loans it made to Mr. Solaas from 1988 through 1992. Mr. Solaas argues the contrary.

For the Court to find constructive fraud, KBI must not have received reasonably equivalent value in exchange for the transfers it made to Mr. Solaas (the loans it made to him). Cal. Civ. Code secs. 3439.04(b) and 3439.05. Respondent has conceded that the alleged transfers were loans. If a promise to repay money provides the transferor with a sufficient quid pro quo when given, the fact that later events may deprive the promise of

value is of no significance--the test is value when given, not the exercise of hindsight.  Pierce v. Commissioner, 61 T.C. 424, 435 (1974).  Accordingly, under California law a bona fide loan may be made for reasonably equivalent value.  See Reidy v. Collins, 26 P.2d 712, 715 (Cal. Ct. App. 1933); Pierce v. Commissioner, supra at 435.

Chris Powell, KBI's controller from 1984 through 1989, testified that, during his tenure at KBI, Mr. Solaas repaid amounts he borrowed from KBI.  Mr. Powell's testimony generally was credible, and we rely on his testimony as it was supported by the record.  See Diaz v. Commissioner, 58 T.C. 560 (1972) (basing analysis upon evaluation of the entire record and the credibility of witnesses); see also Estate of Neff v. Commissioner, T.C. Memo. 1997-186.  Additionally, from 1989 through 1992 Mr. Solaas made repayments to KBI.  Repayments suggest that withdrawals were made with the intent to repay.  See Pierce v. Commissioner, supra at 431; Miele v. Commissioner, 56 T.C. 556, 567-568 (1971), affd. without published opinion 474 F.2d 1338 (3d Cir. 1973); Schneller v. Commissioner, T.C. Memo. 1996-62, affd. without published opinion 129 F.3d 1265 (6th Cir. 1997).  Furthermore, KBI charged Mr. Solaas interest on the money it loaned to him.[4]

---

[4]  KBI did not loan Mr. Solaas any money after Feb. of 1993, but between Feb. of 1993 and Mar. of 1994 the amount Mr. Solaas owed on the loans grew from $911,073.15 to $1,011,340.  This is
(continued...)

Respondent has failed to show, by a preponderance of the evidence, that Mr. Solaas' promise when given had insufficient value to support the transfer.[5] See <u>Pierce v. Commissioner</u>, <u>supra</u> at 435. Therefore, we hold that the loans KBI made to Mr. Solaas were not constructive fraud on KBI's creditors.

<u>KBI's Alleged Forgiveness of the Loans</u>

Respondent argues that "if the alleged loans are treated by the Court as real loans" from KBI to Mr. Solaas, then the forgiveness of those loans and/or the decision not to collect on those loans is a transfer, citing <u>Merriam v. Commissioner</u>, T.C. Memo. 1995-432, affd. without published opinion 107 F.3d 877 (9th Cir. 1997). Respondent contends that this transfer occurred when KBI was insolvent and would constitute constructive fraud.

Respondent bears the burden of proof. Sec. 6902(a); Rule 142(d). Respondent did not point to any evidence that KBI forgave or decided not to collect the loans. Furthermore, respondent has not submitted any evidence that KBI did not receive reasonably equivalent value in exchange for this alleged transfer. Respondent has failed to meet the burden of proof.

---

[4] (...continued)
evidence that KBI charged Mr. Solaas interest.

[5] We note that although Mr. Solaas was present at the trial he did not testify, and respondent, who had the burden of proof, did not call Mr. Solaas as a witness.

Therefore, we hold that the alleged transfer was not constructive fraud on KBI's creditors.

<u>Conclusion</u>

For the reasons stated above, we hold that Mr. Solaas is not liable as a transferee for KBI's taxes and additions thereto.  To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.