T.C. Memo. 2010-169

UNITED STATES TAX COURT

CARL M. UPCHURCH, TRANSFEREE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

BRUCE M. UPCHURCH, TRANSFEREE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 14827-07, 14959-07.    Filed August 2, 2010.

<u>Jonathan P. Decatorsmith</u>, for petitioners.

<u>H. Barton Thomas</u>, for respondent.

MEMORANDUM OPINION

MORRISON, <u>Judge</u>:  In notices of liability dated March 28, 2007, respondent Commissioner of Internal Revenue determined that petitioners, Bruce M. Upchurch (Bruce) and Carl M. Upchurch (Carl), are liable for an estate tax deficiency of $46,758.12, plus interest "as provided by law" up to a total of $53,500 each,

as transferees of assets of the estate of Judith D. Upchurch. The issues for decision are: (i) whether Bruce and Carl are transferees of property of Judith's estate, (ii) whether Bruce and Carl are liable as transferees under Illinois State law or equity principles, (iii) whether the attorney's fees paid to enforce their claims on Judith's estate should be included in the total amounts for which they are liable, and (iv) whether they are liable for interest on the transferred assets, and if so, in what amounts.

## Background

The facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated in this opinion by this reference. Bruce and Carl resided in Illinois and North Carolina, respectively, at the time they filed their petitions. The respondent is the Commissioner of Internal Revenue, whom we refer to here as the IRS.

Tasker M. Upchurch (Tasker) and Judith D. Upchurch (Judith) each had natural-born children from prior marriages at the time of their marriage. Bruce and Carl are Tasker's natural-born sons; Judith never adopted them. Judith had three natural-born children at the time of her marriage to Tasker: Rodney Upchurch (Rodney), Ronald Upchurch (Ronald), and Robin Wojnarowski (Robin). Tasker adopted Judith's three natural-born children. Judith died on August 20, 2000 (after Tasker's death in 1994),

leaving a will dated June 7, 1999. Article II of her will bequeathed specific items of personal property to the five children, Carl, Bruce, Rodney, Ronald, and Robin, and her grandchildren. Article II also directed that her "remaining household furnishings and equipment, automobiles, silverware, books, pictures, and, in general, all of the tangible personal property" of her estate should be distributed to the five children and divided however they agreed. Article III directed that 80 percent of her cash and investments be equally divided among her three natural-born children, Rodney, Ronald, and Robin, and the remaining 20 percent be divided among her 11 grandchildren. Article IV of the will directed that the interest in her house at 1305 Lewis Avenue, Winthrop Harbor, Illinois, be divided equally among the five children. Her three natural-born children were to be the recipients of the residue of her estate.

After Judith executed her will, she subdivided the land on which her house at 1305 Lewis Avenue was located, splitting it into two parcels. The parcel on which the house was located retained the 1305 Lewis Avenue address, and the other parcel was assigned the address 1343 Lewis Avenue. On March 19, 2000, Judith conveyed the 1343 Lewis Avenue parcel to Ronald and his wife, Laura, by quitclaim deed. Ronald built a house on the 1343 Lewis Avenue parcel at a time not indicated by the record. On August 8, 2000, Judith conveyed the 1305 Lewis Avenue parcel to

Robin, also by quitclaim deed.  When Judith died on August 20, 2000, Larry Smith, Judith's brother, was appointed executor in accordance with the terms of the will.  The house on the 1305 Lewis Avenue parcel was not divided into equal interests and distributed to the five children, nor was the 1343 Lewis Avenue parcel, because neither parcel was part of Judith's estate at the time of her death.

On August 17, 2001, Bruce and Carl filed a lawsuit in the Circuit Court of the Nineteenth Judicial Circuit in Lake County, Illinois, against Rodney, Ronald, Laura, and Robin, as individuals, and Larry Smith, as executor of the estate, seeking (i) to impose a constructive trust on the two Lewis Avenue parcels in favor of the estate and its devisees and legatees, including Bruce and Carl, or, in the alternative, (ii) to obtain a declaratory judgment that both quitclaim deeds were invalid. The claim alleged that Judith, in poor health at the time of the parcels' conveyance, used inaccurate, overlapping legal descriptions to convey the parcels and thus "there * * * [were] no valid deeds in the chain of title * * * which would have deprived the estate of the ownership of those parcels."  The claim further alleged that Ronald, Laura, and Robin had a fiduciary duty to Judith "because of other facts and circumstances present in the last months of her life".  The claim asserted that "The purported deeds, if valid, were made in

violation of fiduciary relationship" because the quitclaim deeds operated to Judith's detriment by leaving her no interest in the parcels while she was alive and living in her house, located on one of the parcels.

In November 2001, all of the parties to the litigation signed a settlement agreement. The agreement stated that Judith's estate would pay $53,500 to Bruce and his attorney and $53,500 to Carl and his attorney. The agreement required that, upon its execution, Bruce and Carl would instruct their attorney "to file [on behalf of each of them] a claim in probate against the estate" for $53,500, "which claim will be allowed by the estate and which claim will be declared paid upon the payment of" $53,500 by the estate for each claim. Judith's estate paid Bruce, Carl, and their attorney a total of $107,000 (or $53,500 allocable to each of Bruce and Carl). The payments were made directly to their attorney. The attorney retained out of the proceeds of each claim his one-third contingency fee of $17,833, and transmitted $35,667 each to Bruce and Carl on December 21, 2001.

The estate's tax return, Form 706,[1] was due on May 20, 2001, 9 months after Judith's death, see sec. 6075,[2] but the estate

_____

[1]Form 706 is entitled "United States Estate (and Generation-Skipping Transfer) Tax Return".

[2]Unless otherwise indicated, all section references are to
(continued...)

filed its return on May 27, 2003.  On or about August 25, 2003, Judith's estate distributed a $28,500 tax refund to Ronald and Laura.  The estate distributed substantially all of its other assets before receiving a final determination of the estate's tax liability from the IRS.  At a time not revealed in the record, the IRS audited the tax return.  The IRS disallowed the estate's claims to deduct as debts of the estate the settlement payments made to Bruce and Carl, and disallowed a few minor deductions.[3]  Disallowance of the settlement payments was explained in Form 3228, Adjustments to Taxable Estate:  "Debts claimed by family members disallowed as not being an obligation of the Estate but only a family disagreement".  The audit resulted in the determination in Form 3228, Adjustments to Taxable Estate, of a $46,758.12 deficiency in estate tax.  On April 22, 2005, Smith, as executor of Judith's estate, and Ronald and Laura, as "successor executors" of the estate, signed a Form 890, Waiver of Restrictions on Assessment and Collection of Deficiency and

---

[2](...continued)
the Internal Revenue Code (Code), and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3]Although the return was not timely, the IRS's examiner noted on Form 3228 that

PENALTY SECTION 6651

AFFIDAVIT attached satisfies possible penalties as being reasonable as an excuse and should not be assessed.

Acceptance of Overassessment--Estate, Gift, and Generation-Skipping Transfer Tax, in which they agreed to immediate assessment and collection of the proposed deficiency.[4] On July 11, 2005, the IRS assessed the deficiency of $46,758.12 and interest of $7,162.53 and reversed a credit of $151.18 for interest due to the estate on the tax refund.

The IRS did not collect any of the assessed tax liability from Judith's estate or from any of the beneficiaries of Judith's estate (other than Bruce and Carl). On March 28, 2007, the IRS sent separate notices of liability to Bruce and Carl. Each of the notices stated:

> The determination of the estate tax liability of the Estate of Judith D. Upchurch, Deceased, 1305 Lewis Avenue, Winthrop Harbor, IL 60096, discloses a deficiency in the amount of $46,758.12, as shown on the attached statement. This amount, plus interest as provided by law, up to $53,500.00 constitutes your liability as transferee of assets of the estate of the decedent and will be assessed against you. This is your NOTICE OF LIABILITY, as required by law.

Bruce and Carl separately petitioned this Court on July 2, 2007, and June 29, 2007, respectively. On November 12, 2007, the IRS

---

[4]In an affidavit attached to the Form 890 Smith claimed to have

> delegated [his] authority as Executor to resolve * * * [audit-related matters] to my nephew, Ronald Upchurch, and his wife, Laura Upchurch, as Successor Co-Executors and they agreed to accept that authority and to resolve this matter with the Internal Revenue Service and to pay any and all unpaid federal estate taxes which may be determined to be owed by the Estate of Judith D. Upchurch.

assessed a 25 percent "failure to pay penalty" of $11,727.32 against Judith's estate. The IRS filed a motion to consolidate the cases on February 4, 2008, which the Court granted on March 5, 2008. The parties agreed to submit the cases without a trial under Rule 122.

### Discussion

The Federal estate tax is imposed "on the transfer of the taxable estate of * * * [a] decedent", sec. 2001(a), but the tax is literally "paid" by the executor of the estate, sec. 2002.[5] The amount of the Federal estate tax is an arithmetical function of the taxable estate. Sec. 2001(b). The taxable estate is defined as the value of the gross estate minus deductions. Sec. 2051. The value of the gross estate includes the value of all property owned by the decedent at death. Sec. 2031.

The notices of liability in these cases were based on section 6901(a)(1)(A)(ii), which provides:

---

[5]Stephens et al., Federal Estate and Gift Taxation, par. 2.02, at 2-15 (8th ed. 2002), discusses whether the liability of an executor reaches the executor's personal funds and whether an executor could sue someone else to obtain reimbursement for the amounts the executor paid to satisfy the liability. See also id. par. 8.03, at 8-11.

The term "executor" is defined by the Code as "the executor or administrator of the decedent, or, if there is no executor or administrator appointed, qualified, and acting within the United States, then any person in actual or constructive possession of any property of the decedent." Sec. 2203.

SEC. 6901(a). Method of Collection.--The amounts of the following liabilities shall * * * be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:

(1) Income, estate, and gift taxes.--

(A) Transferees.--The liability, at law or in equity, of a transferee of property--

\*      \*      \*      \*      \*      \*      \*

(ii) of a decedent in the case of a tax imposed by chapter 11 (relating to estate taxes) * * *

Section 6901(a) does not independently impose tax liability upon a transferee, but provides a procedure through which the IRS may collect unpaid taxes owed by the transferor of the assets from a transferee if an independent basis exists under applicable State law or State equity principles for holding the transferee liable for the transferor's debts. Commissioner v. Stern, 357 U.S. 39, 45 (1958). The law and equity principles of Illinois govern Bruce's and Carl's transferee liability because Judith was an Illinois resident at the time of her death and her estate was administered under Illinois law. See Berliant v. Commissioner, 729 F.2d 496, 499 (7th Cir. 1984), affg. Magill v. Commissioner, T.C. Memo. 1982-148. The IRS bears the burden of proving that

the transferee is liable as "a transferee of property of a

taxpayer".  Sec. 6902(a).[6]

---

[6]The Tax Court in <u>Gumm v. Commissioner</u>, 93 T.C. 475, 480 (1989), affd. without published opinion 933 F.2d 1014 (9th Cir. 1991), listed the following general requirements for transferee liability:

> (1) That the alleged transferee received property of the transferor; (2) that the transfer was made without consideration or for less than adequate consideration; (3) that the transfer was made during or after the period for which the tax liability of the transferor accrued; (4) that the transferor was insolvent prior to or because of the transfer of property or that the transfer of property was one of a series of distributions of property that resulted in the insolvency of the transferor; (5) that all reasonable efforts to collect from the transferor were made and that further collection efforts would be futile; and (6) the value of the transferred property (which determines the limit of the transferee's liability).

<u>Id.</u> (citations omitted).  Bruce and Carl state in their opening brief that the IRS must show the requirements have been met to establish transferee liability.  But the Tax Court in <u>Hagaman v. Commissioner</u>, 100 T.C. 180, 183-184 (1993), explained that

> Professors Bittker and Lokken have stated that "This distillation of what is sometimes called the trust fund theory is a useful guide, but, to the extent it implies there is a common body of national law protecting the rights of creditors, it must yield to the Supreme Court's admonition in <u>Stern</u> that 'the existence and extent of [transferee] liability should be determined by state law.'" 4 Bittker & Lokken, Federal Taxation of Income, Estates and Gifts, par. 111.6.7, at 111-188 (2d ed. 1992) (quoting <u>Commissioner v. Stern</u>, <u>supra</u> at 45) (fn. ref. omitted).  We agree with Professors Bittker and Lokken.  We would therefore emphasize that <u>Gumm</u>'s distillation of the trust fund theory is viable only as a <u>generalization</u> of typical State law; section 6901 does not itself impose those requirements.  We would further caution that <u>Gumm</u>'s distillation of the trust fund theory, which theory

(continued...)

I. <u>Transfer of Estate Property</u>

The first issue is whether Bruce and Carl are in fact transferees of property of Judith's estate. An estate is a legal entity comprised of the property of a decedent. Section 6901(h) provides that the term "transferee" includes "donee, heir, legatee, devisee, and distributee". Bruce and Carl do not deny that they are transferees under section 6901(h), but they deny that they are transferees "of property * * * of a decedent" under section 6901(a)(1)(A)(ii). Transfers by the "decedent" under section 6901(a)(1)(A)(ii) include transfers by the decedent's estate. Sec. 301.6901-1(b), Proced. & Admin. Regs. But Bruce and Carl argue that the individual defendants in the estate litigation (i.e., Rodney, Ronald, Laura, and Robin), not Judith's estate, should be considered the transferors of the property they received. They reason that if their lawsuit had resulted in a judgment, the individual litigants, not Judith's estate, would

---

[6](...continued)
pertains to transferee liability <u>in equity</u>, is not a useful guide regarding transferee liability <u>at law</u> (e.g., under a corporate merger statute or bulk sales law), whose elements typically are quite different.

   Moreover, even with regard to transferee liability in equity, certain of the elements described in <u>Gumm</u> frequently are unnecessary under State law. * * * [Citation and fn. ref. omitted.]

Thus, we do not follow <u>Gumm</u>'s requirements here to the extent they do not reflect Illinois law, as indicated by <u>Commissioner v. Stern</u>, 357 U.S. 39 (1958).

have been liable for and would have paid the damages. This last premise, we think, is dubious. One of the defendants named in the lawsuit was the executor of Judith's estate. Thus, the estate was at least potentially liable for any future judgment. Even if we were to accept the premise that the individual defendants would have been solely liable for a judgment, this does not change the fact that a "transfer" took place from Judith's estate to Bruce and Carl. The $53,500 payments were actually made by Judith's estate to Bruce and Carl. The payments were compelled by the settlement agreement, which expressly required Bruce and Carl to file a $53,500 claim against Judith's estate, and which expressly required Judith's estate to pay the claim. Thus, the record establishes that Bruce and Carl received property from Judith's estate. It may be that Bruce and Carl mean to argue that the transfer from Judith's estate should be recharacterized as two transfers: (1) constructive payments from the estate to the individual defendants, and (2) payments from the individual defendants to Bruce and Carl. Although it may be appropriate to deconstruct a transfer into two transfers for some federal tax purposes,[7] this treatment should not be afforded here in applying transferee liability principles. We consider the transfers to have been made from Judith's estate to Bruce and

---

[7]See Stephens et al., supra, par. 10.01[2][e], at 10-10 ("If, for no consideration, A discharges B's legal obligation to C, A may have made a gift to B.").

Carl.  But even if we were to consider the transfer in question to be in reality separate transfers, such a characterization would not relieve Bruce and Carl of liability for the estate tax. The reason is that a transferee of a transferee is also liable. See sec. 6901(c)(2); Bos Lines, Inc. v. Commissioner, 354 F.2d 830, 835 (8th Cir. 1965) ("the tenor of numerous decisions we have examined makes it convincingly clear that the term 'transferee', as used in the statute, encompasses a 'transferee of a transferee'"), affg. T.C. Memo. 1965-71.  Therefore, transfers from Judith's estate to the individual defendants followed by transfers from the individual defendants to Bruce and Carl would still burden Bruce and Carl with liability for the estate tax.

Bruce and Carl argue that they were not transferees of estate property within the meaning of section 6901(a) because the settlement payment they received was an arm's-length exchange for the waiver of their right to sue to enforce the terms of the will.  But the settlement payment they received was a substitute for the real property that was devised to them in Judith's will but was not available for distribution to them upon her death. For tax purposes, it is appropriate to treat the settlement payment as a transfer from the estate.  Cf. Estate of Taracido v. Commissioner, 72 T.C. 1014, 1023 (1979) (tax treatment of a settlement payment as lost profits as opposed to tax-free return

of capital is determined by the character of the underlying legal claim that gave rise to the settlement payment), affd. per order (2d Cir., Sept. 29, 1980); Freeman v. Commissioner, 33 T.C. 323, 327 (1959). Thus, Bruce and Carl are transferees of property from Judith's estate within the meaning of section 6901(a).

II.  Transferee Liability for Deficiency and "Failure To Pay Tax" Penalty

The IRS argues that Bruce and Carl are liable as transferees (i) under equity principles long recognized in Illinois and (ii) at law under the Illinois Uniform Fraudulent Transfer Act (IUFTA). As explained below, we hold that they are liable for the estate's tax deficiency under Illinois equity principles, and thus we need not consider the IRS's claim at law.[8] Bruce and Carl deny that they are liable as transferees under Illinois equity principles because they claim that according to Berliant

---

[8]The IRS argues that Bruce and Carl are liable under IUFTA because the transfers to them constituted "fraud in law" as the transfers occurred without adequate consideration and rendered the estate insolvent and unable to pay a purportedly foreseeable tax deficiency. Bruce and Carl deny that they are liable under the IUFTA because they claim the transfer of property to them was made for adequate consideration under the settlement agreement.

The IRS also argues that the period of limitations for assessment of transferee liability under sec. 6901(a), (c)(1), and (f) against Bruce and Carl has not expired. As Bruce and Carl do not contest the issue, we deem the point conceded. The IRS also conceded that sec. 6324(a)(2) does not provide an alternative basis for imposing transferee liability, as initially asserted in its answer (sec. 6324(a)(2) holds a transferee personally liable for estate tax "not paid when due").

v. Commissioner, 729 F.2d 496 (7th Cir. 1984), an estate tax transferee liability case, the IRS was required to file a petition in the probate court requesting an order to return funds.  It is true that the Court of Appeals for the Seventh Circuit in Berliant v. Commissioner, supra at 499-500, held that under Illinois statutory law (as then in effect), the IRS was required to file a probate petition requesting a return of funds to establish transferee liability for unpaid estate taxes.  But the Court of Appeals expressly noted that it was not necessary for the IRS to prove Berliant's liability under Illinois law because it could prove Berliant's liability at equity.  Id. at 500.

The transferee in Berliant was held liable as a transferee for the Federal estate tax because such liability was required by principles of Illinois equity:  "As a matter of equity, Illinois has long imposed on estate transferees liability to creditors of the estate."  Id. at 500 (citing Union Trust Co. v. Shoemaker, 101 N.E. 1050, 1053 (1913)).  Bruce and Carl have failed to distinguish their cases from Berliant or the Illinois equity principles applied in Berliant.  We hold that Illinois equity principles establish transferee liability for the estate's tax deficiency of $46,758.12 at issue in these cases.[9]

---

[9]The Berliant Court stated that "Because we conclude that transferee liability is based on Illinois equity principles, it
(continued...)

The "Failure to Pay Tax" penalty of $11,727.32 is a different matter, over which we have no jurisdiction. The IRS assessed the amount against the estate on November 12, 2007, after the notices of liability were issued to Bruce and Carl on March 28, 2007. Thus, the penalty was not mentioned in either notice of liability. The record does not even establish directly the statutory authority for the penalty, other than to refer to it as the "Failure to Pay Tax" penalty in Form 4340, Certificate of Assessments, Payments, and Other Specified Matters. The IRS mentions in its brief only that a "25% failure to pay tax" penalty was assessed without explaining why it was assessed. We believe that the "Failure to Pay Tax" penalty mentioned in Form 4340 refers to the section 6651(a)(3) addition to tax, not the section 6651(a)(2) addition to tax. The section 6651(a)(2) addition to tax applies only when the taxpayer does not pay the tax shown on his or her return. See sec. 6651(a)(2). Here the estate paid the tax shown on its return. The section 6651(a)(3) addition to tax applies in the case of a taxpayer's failure

> to pay any amount in respect of any tax required to be shown on a return * * * which is not so shown (including an assessment made pursuant to section

---

9(...continued)
is not necessary to decide the government's alternative argument that liability might also be established under Illinois' fraudulent conveyance statutes." Berliant v. Commissioner, 729 F.2d 496, 501 n.9 (7th Cir. 1984). Similarly, we need not examine the merits of the IRS's argument that Bruce and Carl are liable for estate taxes under the IUFTA.

6213(b)) within 21 calendar days from the date of
notice and demand therefor * * *, unless it is shown
that such failure was due to reasonable cause and not
due to willful neglect * * *.

Sec. 6651(a)(3). The addition to tax is 0.5 percent per month of the amount of the tax stated in the notice and demand for payment, up to a maximum of 25 percent. Id. Form 4340 states that a notice of balance due was sent on July 11, 2005. Even though 50 months had not passed when the addition to tax was assessed on November 12, 2007 in the approximate amount of 25 percent of the deficiency, we conclude that the reference to the "Failure to Pay Tax" penalty in Form 4340 must be to the section 6651(a)(3) addition to tax.

We do not have jurisdiction to determine this addition to tax in this proceeding. The Tax Court can redetermine matters raised by the IRS in the notice of deficiency or liability, or in the answer to a petition (or amendments to the answer) only if the Court has jurisdiction over the issues so raised. See Kellogg v. Commissioner, 88 T.C. 167, 175 (1987); Rollert Residuary Trust v. Commissioner, 80 T.C. 619, 636 (1983), affd. 752 F.2d 1128 (6th Cir. 1985); Medeiros v. Commissioner, 77 T.C. 1255, 1260 (1981); Markwardt v. Commissioner, 64 T.C. 989, 997 (1975). This Court has exercised jurisdiction over the section 6651(a)(3) addition to tax in a transferee liability proceeding when the addition to tax was specifically mentioned in the notice of liability. See generally Ewart v. Commissioner, 85 T.C. 544

(1985), affd. 814 F.2d 321 (6th Cir. 1987); <u>Solaas v.
Commissioner</u>, T.C. Memo. 1998-25.  But in these cases the IRS did
not raise the addition to tax as an issue until it filed its
brief, omitting it from the notice of liability.  The IRS thus
gave no notice to Bruce and Carl that the section 6651(a)(3)
addition to tax would be at issue.  See <u>Markwardt v.
Commissioner</u>, <u>supra</u> at 997 ("Whether an issue has been properly
raised depends upon whether the opposing party has been given
fair notice of the matter in controversy." (citing Rule 31(a))).
This Court has held that "when the Commissioner does mail to a
transferee a notice of liability under section 6901 * * *, he
must inform the transferee of the extent and nature of the tax
deficiency which he is claiming against the transferor."
<u>Kuckenberg v. Commissioner</u>, 35 T.C. 473, 483-484 (1960), affd. in
part and revd. in part 309 F.2d 202 (9th Cir. 1962).  The same
logic applies to additions to tax.  We cannot determine additions
to tax against a taxpayer who does not have fair notice of them.
Thus, we hold that we do not have jurisdiction to determine the
section 6651(a)(3) addition to tax.

III. <u>Limit of Transferee Liability</u>

The parties agree that if Bruce and Carl are liable as
transferees, they are each individually liable only for the value
of the property transferred to each of them.  The issue in
dispute is the dollar amount of the transfer to each of them.

The settlement agreement provided that "the estate will pay * * * to Bruce Upchurch and his attorney Hercules Paul Zagoras * * * [$53,500] * * *, and to Carl Upchurch and his attorney Hercules Paul Zagoras * * * [$53,500]".  Zagoras's settlement statement reflects that Judith's estate directly paid him the entire settlement amount, $107,000, and that he then transmitted $35,667 each to Bruce and to Carl, retaining the balance of the proceeds as a one-third contingency fee.  Bruce and Carl argue that the value of the property transferred to them was equal to the amounts each actually received net of their attorney's fees, $35,667.  The IRS contends that Bruce and Carl were transferred the full amount of the settlement payments, $53,500 per person, without reduction for the $17,833 Bruce and Carl each paid to their attorney.

The United States Supreme Court has addressed a similar issue in a way instructive here.  In Commissioner v. Banks, 543 U.S. 426, 430 (2005), the Supreme Court held that the amount of damage payments includable in a plaintiff's gross income should not be reduced by the contingent fee paid to the plaintiff's attorney.  The Court reasoned that "In the case of a litigation recovery the income-generating asset is the cause of action that derives from the plaintiff's legal injury.  The plaintiff retains dominion over this asset throughout the litigation."  Id. at 435. It explained further that "although the attorney can make

tactical decisions without consulting the client, the plaintiff still must determine whether to settle or proceed to judgment and make, as well, other critical decisions." Id. at 436. It concluded that the plaintiff relied on the attorney "to realize an economic gain, and the gain realized by the * * * [attorney's] efforts is income to the * * * [plaintiff]." Id. at 437. Similarly, Bruce and Carl ultimately controlled the entire litigation process to enforce their rights under the will. They authorized the payment to their attorney. Thus, the property procured by their agent, Zagoras, is attributable to them even though Zagoras's fee did not pass directly through Bruce and Carl's hands. The limit of transferee liability of each of Bruce and Carl is therefore the total payment made to each of them ($53,500 each), including the portion paid to Zagoras as his fee.

IV. Interest

The IRS has determined interest on the deficiency. Bruce and Carl do not address the issue of interest. We have jurisdiction over interest in transferee liability cases, and thus we proceed to determine the legal basis for the calculation of interest. See 508 Clinton St. Corp. v. Commissioner, 89 T.C. 352, 354 (1987); LTV Corp. v. Commissioner, 64 T.C. 589, 597 n.15 (1975). In Estate of Stein v. Commissioner, 37 T.C. 945, 959 (1962), this Court bifurcated the calculation of interest into two periods separated by the date when the notice of liability is

issued.  In discussing the interest period before the notice of liability is issued, the Court explained:

> In cases where the transferred assets exceed the total liability of the transferor, the interest charged is upon the deficiency, and is therefore a right created by the Internal Revenue Code.  However, where, as here [in Estate of Stein v. Commissioner], the transferred assets are insufficient to pay the transferor's total liability, interest is not assessed against the deficiencies because the transferee's liability for such deficiencies is limited to the amount actually transferred to him.  Interest may be charged against the transferee only for the use of the transferred assets, and since this involves the extent of transferee liability, it is determined by State law. Commissioner v. Stern, supra.

Id. at 961.  The Court stated that after the notice of transferee liability is issued, interest is determined under Federal law pursuant to section 6601(a)[10] regardless of whether the value of the transferred assets exceeds the deficiency for which the transferee is liable.  Id. at 959.  Thus, interest after the notice of liability is issued is determined under section 6601. We must determine only whether Federal or State law governs the running of interest for the period before the notice of liability is issued.

---

[10]Sec. 6601(a) provides:

> If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate established under section 6621 shall be paid for the period from such last date to the date paid.

As Estate of Stein directs, Federal law governs the running of interest for the period before the notice of liability is issued if the value of the transferred assets is more than the deficiency.  We have already determined that the amount transferred to Bruce and Carl was $53,500 each, an amount which exceeds the estate's deficiency of $46,758.12 determined in each notice of transferee liability.  Following the rule of Estate of Stein, interest for the period before the notice of liability is issued is determined by Federal law.[11]  Section 6601(a) provides that interest is due from the due date of the estate's tax return to the date the estate's tax liability is paid.  Thus, interest in these cases is determined entirely under Federal law pursuant to section 6601 for both interest periods; i.e., the period before March 28, 2007 (the date the notices of liability were issued), and the period after March 28, 2007.

The IRS asserts that the period of interest before the notice of liability is issued should commence with the date Bruce

---

[11]We do not include the $11,727.32 "Failure to Pay Tax Penalty" in the calculation of the estate's (transferor's) liability for purposes of the Estate of Stein comparison because it was assessed after the notice of liability was issued (and after the executors signed a waiver agreeing to assessment of only the deficiency and underpayment interest).  Also, the Court in Estate of Stein indicated that the transferor's liability includes only the amounts included in the notice of deficiency issued to the transferor.  Estate of Stein v. Commissioner, 37 T.C. 945, 961 (1962).  The "Failure to Pay Tax Penalty" amount is thus not included as part of the transferor's total liability for purposes of the Estate of Stein test.

and Carl received the funds, December 21, 2001, and that the rate should be determined under Illinois law.  The IRS thus requests that interest begin to accrue on the date of the transfer, not the date the estate's return was due (May 20, 2001).  Although the IRS does not specifically state what the exact interest rate should be, it suggests this Court has discretion to raise the rate from the typical 5 percent prejudgment rate to the prime rate.  We need not decide the correct amount of interest to be awarded under Illinois law for the period before the issuance of the notice of liability because we have determined that Federal law, not Illinois law, determines the rate of interest applicable for all relevant periods in these cases.  Federal law also requires that the accrual of interest begin on the date the estate's return was due, not the date of the transfer.  Thus, we hold that interest accrual shall commence on the date the estate's return was due.

In reaching out holdings here, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Appropriate decisions</u>

<u>will be entered</u>.