T.C. Memo. 1996-62


UNITED STATES TAX COURT


JOSEPH P. AND MARILYN SCHNELLER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 497-94.          Filed February 15, 1996.


<u>Irwin G. Waterman</u> and <u>Michael T. Hymson</u>, for petitioners.

<u>Martha Sullivan</u>, <u>Jack A. Joynt</u>, and <u>William C. Shouse</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:  Respondent determined a deficiency in petitioners' Federal income tax for 1990 in the amount of $138,748 and an accuracy-related penalty pursuant to section 6662(a) in the

amount of $26,676 for such year.[1]  Respondent reflected this determination in a notice of deficiency dated October 13, 1993.

The principal unagreed item involves respondent's determination that petitioners realized forgiveness of indebtedness income pursuant to section 61(a)(12) as a result of a $476,363 writeoff in 1990 of accounts that had been carried on the books of petitioners' wholly owned corporation (Land Air Delivery, Inc.) essentially as shareholder loans.  Also in dispute is the section 6662 accuracy-related penalty.  The writeoff followed the settlement of a tax examination for years 1982-84.  In the settlement, the parties agreed that petitioners' withdrawals from Land Air Delivery, Inc., should have been characterized, in part, as dividends rather than shareholder loans.  Petitioners maintain that such withdrawals constitute dividend income in the year of withdrawal, not 1990, and hence the writeoff in 1990 did not give rise to a taxable event.  Accordingly, the issues we must decide are:

(1)  Whether, as a result of the settlement agreement for years 1982-84, respondent is estopped from asserting that the corporate advances written off in 1990 were loans.  We hold that respondent is not.

(2)  Whether petitioners realized discharge of indebtedness

---

[1]     Petitioners made income tax payments for 1990 totaling $138,748 after filing their petition in this Court to stop the accrual of interest.

income in 1990.  We hold that they did.

(3)  Whether petitioners are liable for the accuracy-related penalty pursuant to section 6662.  We hold that they are.

All section references are to the Internal Revenue Code in effect for the year under consideration.  All Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Background

Petitioners, husband and wife, resided in Bowling Green, Kentucky, at the time they filed their petition.  They timely filed a joint Federal income tax return for 1990, the year under consideration.

Petitioners own all the stock of Land Air Delivery, Inc. (Delivery or the corporation), an air freight motor carrier that engages in the pickup and delivery of packages for overnight carriers.  Joseph P. Schneller (petitioner) started Delivery in 1963 with a single truck.  At its peak, Delivery operated 250 trucks and delivered freight nationwide.  For all periods relevant to this case, petitioner was the president and Mrs. Schneller was the secretary of Delivery.

Delivery has been a subchapter C corporation from its inception.  Corporate income tax returns (Forms 1120) were filed

for Delivery through 1989. All such returns for periods bearing on this case were executed by one or the other of petitioners in their capacities as corporate officers.

Delivery was a union company. After a bout of trouble with the Teamsters, Delivery was phased out in favor of a new nonunion company named Land Air Express, Inc. (all the stock of which is owned by petitioners), which today operates the business formerly conducted by Delivery.

Delivery underwent a reorganization in 1990 and filed its corporate income tax return for that year under its new name, KTM, Inc.

Shareholder Loan Accounts

From time to time, commencing at dates prior to 1976, petitioner made withdrawals from Delivery. Some of the withdrawals were recorded as shareholder loans, advances, or investments. None was included in petitioners' income. In 1979, Delivery's stockholders adopted a resolution ratifying all existing loans, advances, and investments and authorized the corporation to continue such transactions. As part of the resolution, petitioner agreed to repay the amounts on demand.

In 1982, petitioner sold his interest in a waste management company for $800,000. He did not use any of the proceeds to repay his withdrawals from Delivery.

In September 1984, petitioner was advised by his accountant,

James Luscombe,[2] that interest-bearing notes should be prepared to evidence the loans, advances, and investments. Petitioner did not follow this advice although petitioners did agree to the accrual of interest for the year 1984.

Petitioners' 1982, 1983, and 1984 individual tax returns and Delivery's related corporate returns were selected for examination by respondent's Wichita, Kansas, district office.[3] The examination included an analysis of Delivery's shareholder loan accounts. The balances in the accounts increased by $14,995 in 1982, $75,404 in 1983, and $42,502 in 1984, for a 3-year total increase of $132,901. Throughout the examination, petitioners (through their representatives)[4] insisted that their withdrawals from Delivery were loans. The examining agent concluded that a portion ($51,065) of the increase in the account balances for the 1982-84 years ($132,901) should be taxed as dividend income to petitioners; he

---

[2] From 1963 through 1987, Mr. Luscombe prepared all of the financial statements and corporate tax returns for Delivery, as well as petitioners' individual tax returns. The financial statements were prepared monthly from records delivered to Mr. Luscombe by Mrs. Schneller. Following petitioners' move from Kansas City to Kentucky, petitioners retained William B. Arthur, Jr. to perform the accounting and tax work for Delivery and themselves. The first return Mr. Arthur prepared in 1990 was the 1988 corporate return for Delivery.

[3] The examination centered around the examiner's determination that the Schnellers underreported their income for years 1982-84, as well as the examiner's proposal to assert the fraud addition to tax.

[4] James Baker, an attorney, and Mr. Arthur represented petitioners with respect to the 1982-84 tax examination.

further concluded that the majority ($81,896) of the increase should be treated as loans, as should all balances existing prior to 1982. All issues arising from that examination (for both petitioners and Delivery) were ultimately settled by execution of two Forms 870-AD (one for petitioners individually and the second for Delivery) by petitioners and a representative of respondent's Kansas City Appeals Office on June 1, 1990.

Shortly after the settlement, petitioners' accountant (Mr. Arthur) wrote off $527,428 against the corporation's retained earnings. The $527,428 represented the balances in the following 12 accounts (which reflected withdrawals either by or for the benefit of petitioners):

| Title | Amount |
|---|---|
| Joe Schneller | $ 70,125 |
| Farm | 163,694 |
| S & S Oil | 16,646 |
| Jim Schneller | 11,500 |
| Cattle | 34,967 |
| Oil wells | 3,700 |
| Barnard Realty | 46,031 |
| Transportation management | 5,585 |
| Payable to Marilyn Schneller | (23,856) |
| Insulating coating | 54,656 |
| BG Beer | 8,200 |
| Investment-BG Beer | 136,180 |
| TOTAL | $527,428 |

Respondent does not challenge $51,065 of the $527,428 written off. Respondent does, however, challenge $476,363 of the writeoff on the grounds that the 12 accounts had consistently been carried on the corporate books as loans, and petitioners never included any part of the $476,363 in their personal income. Petitioners were solvent

both before and after the writeoff of the 12 accounts. Before the writeoff neither petitioners nor their corporation gave any indication that the accounts would not be repaid. Since the date of the writeoff, Delivery has made no demands for repayment of the account balances involved, nor has Delivery in any other way asserted that petitioners still owe the balances. Nor have petitioners in any way indicated that they still consider themselves indebted to the corporation for those balances.

On Delivery's 1990 tax return (filed under the name KTM, Inc.), the $527,428 writeoff is characterized as the writeoff of previous dividends. Delivery's accountant (Mr. Arthur) knew that only $51,065 had been taxed as dividend income to petitioners during the audit of years 1982 through 1984. Mr. Arthur also knew that interest had been imputed on the remaining loan balances. And he was aware that characterizing the amounts as dividend income was advantageous to petitioners. The purported dividend income involved years now closed by the statute of limitations.

OPINION

Preliminarily, we note that petitioners claim that respondent's notice of deficiency is invalid because it was based solely on the revenue agent's arbitrary conclusion that the amounts written off should not go untaxed. We find this argument to be without merit. The revenue agent credibly testified that he had sufficient evidence concerning the distributions at issue to make his determination. Petitioners offered no evidence to contradict

the agent's testimony. Instead, petitioners proved only that the agent did not conduct a new examination of the nature of each shareholder distribution.

A deficiency determination generally is afforded a presumption of correctness unless it is without any foundation. <u>United States v. Janis</u>, 428 U.S. 433, 440-441 (1976). The agent had the results of the 1982 through 1984 examination, petitioners' records of the accounts and the entries charging them off, and the applicable individual and corporate returns. The documents showed that interest had been computed on the pre-1982 shareholder loan balances and the portion of the 1982 through 1984 account increases that was treated as loans. Hence, there was a sufficient basis for the agent's determination in this case.

<u>Issue 1. Estoppel</u>

The first issue for decision is whether respondent is estopped, as petitioners contend, from asserting that the corporate advances written off in 1990 were loans. As the basis for this argument, petitioners rely on their settlement with the IRS for years 1982-84, wherein the IRS and petitioners characterized approximately 38 percent of the additions to the accounts at issue as dividends with the remainder as loans. We believe petitioners' estoppel argument to be without merit.

A settlement agreement is binding only with respect to the years specified by the agreement. <u>Goldman v. Commissioner</u>, 39 F.3d 402, 405-406 (2d Cir. 1994), affg. T.C. Memo. 1993-480. The

applicable Forms 870-AD petitioners and respondent executed address only years 1982, 1983, and 1984 and treat only a portion of the account increases as dividends. The forms have no application to other years.

Issue 2. Discharge of Indebtedness Income

Each of the parties is taking a position contrary to that taken in connection with the 1982-84 examination. Respondent maintains that the character of the items written off was that of loans and as such, the writeoff gave rise to discharge of indebtedness income under section 61(a)(12). Petitioners now maintain that the items written off should be characterized as dividends. Respondent further contends that petitioners are estopped by the duty of consistency from denying that the character of the corporate advances was that of loans. We agree with respondent.

Section 61(a)(12) defines income to include amounts realized from the discharge of indebtedness. The discharge of a debt below face value accords the debtor an economic benefit functionally equivalent to income. Babin v. Commissioner, 23 F.3d 1032, 1034 (6th Cir. 1994), affg. T.C. Memo. 1992-673.

The shareholder accounts at issue were carried on Delivery's books as shareholder loans, some dating back to 1976, until they were written off in 1990. Further, Delivery's stockholders (that is, petitioners) adopted a resolution ratifying all existing loans, advances, and investments, and authorized the corporation to

continue such transactions. And petitioner agreed to repay the amounts on demand. Petitioners' accountant (Mr. Luscombe) advised petitioners that interest-bearing notes should be prepared to bolster their position that the amounts were loans. Petitioners maintained that position throughout the audit of their 1982, 1983, and 1984 returns. Further, the increases in the accounts were not included in petitioners' income except certain amounts stemming from the 1982 through 1984 audit.

Petitioners made repayments of more than $300,000 between 1984 and 1990. Repayments are evidence that corporate advances constitute loans. See Pierce v. Commissioner, 61 T.C. 424, 431 (1974). Repayments suggest that withdrawals were made with an intent to repay, which supports a finding that the withdrawals were loans. Miele v. Commissioner, 56 T.C. 556, 567-568 (1971), affd. 474 F.2d 1338 (3d Cir. 1973).

A debt is discharged when it becomes obvious that the debt will not have to be repaid. Cozzi v. Commissioner, 88 T.C. 435, 445 (1987). Cash withdrawals from a corporation by a stockholder in the form of loans generally are taxed in the year that corporate action was taken canceling or charging off such accounts against surplus. Shephard v. Commissioner, 340 F.2d 27, 30 (6th Cir. 1965), affg. per curiam T.C. Memo. 1963-294. In this case, the discharge took place in 1990 when Delivery charged off the accounts against retained earnings. In sum, we hold that as a result of the 1990 writeoff, petitioners realized income from the discharge of

indebtedness in that year.

Even assuming, arguendo, that the character of the amounts dispersed to petitioners from Delivery was that of a dividend, we still believe respondent should prevail on the grounds that petitioners are precluded by the duty of consistency from denying that the amounts were loans. See Bartel v. Commissioner, 54 T.C. 25 (1970).

Petitioners consistently maintained that the shareholder accounts represented loans, not dividends. The accounts were written off only shortly after the audit of years 1982 through 1984 was resolved. That was the first time petitioners had taken the position that the amounts received in prior years were dividends. The statute of limitations had closed on those prior years.

A taxpayer who obtains a benefit by taking a position in one year cannot disavow that position in a later year to the detriment of the Government. See Commissioner v. Liberty Bank & Trust Co., 59 F.2d 320, 325 (6th Cir. 1932); see also Commissioner v. National Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149 (1974) (citing Higgins v. Smith, 308 U.S. 473, 477 (1940); Beltzer v. United States, 495 F.2d 211 (8th Cir. 1974)).

Issue 3. Accuracy-Related Penalty

The final issue is whether petitioners are liable for the 20-percent accuracy-related penalty for underpayment of tax attributable to negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1). Petitioners contend that they should not

be liable for the accuracy-related penalty because they did not review their 1990 return, but rather relied on their accountant, Mr. Arthur.

"The voluntary failure to read a return and blind reliance on another for the accuracy of a return are not sufficient bases to avoid liability for negligence additions to tax." Bollaci v. Commissioner, T.C. Memo. 1991-108 (citing Baqur v. Commissioner, 66 T.C. 817, 823-824 (1976), remanded on other grounds 603 F.2d 491 (5th Cir. 1979)). Taxpayers have a duty to read a return and make sure all income items are included. Magill v. Commissioner, 70 T.C. 465, 479-480 (1978), affd. 651 F.2d 1233 (6th Cir. 1981) (citing Bailey v. Commissioner, 21 T.C. 678, 687 (1954)). The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for such portion and if the taxpayer acted in good faith. Tippin v. Commissioner, 104 T.C. 518, 533-534 (1995).

Petitioners claim that they were completely ignorant of what appeared on their tax returns, which were prepared by an accountant. We do not believe them. We observed petitioner while testifying and found him to be financially astute. Despite petitioner's limited formal education, he built a highly successful nationwide company.[5] Obviously, petitioners knew about the writeoff. In our opinion, both petitioner and his wife possessed

---

[5] Petitioner attempted to portray himself as a "country bumpkin", but we believe he was "sly as a fox".

sufficient knowledge to understand, and in fact knew, the benefits flowing to them by Mr. Arthur's acts.  They could have objected to the writeoff but either affirmatively acquiesced in it or purposely chose to be silent.  Accordingly, we conclude that petitioners had no reasonable cause for omitting income realized from the discharge of indebtedness.  We therefore hold that the underpayment of tax was due to petitioners' negligence and disregard of rules or regulations.

To reflect the foregoing,

Decision will be entered for respondent.