T.C. Memo. 2000-314

UNITED STATES TAX COURT

MIDWEST STAINLESS, INC. AND
ROBERT A. AND MARY J. LECHNER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24616-97.                    Filed October 4, 2000.

     After L incorporated his cash method sole
proprietorship, he received payments for its jobs in
progress and paid the associated expenses. In
accordance with the advice of L's accountant, the
receipts and payments were treated as those of the
corporation for book and tax purposes, and the
corporation made a book entry on its accounting records
showing a receivable from L to the corporation in the
amount of the receipts, which, the parties agree, was
valid debt. Thereafter, L was indicted for failing to
report income of the sole proprietorship on his pre-
incorporation personal income tax returns. L incurred
and paid legal defense fees, which, in accordance with
his accountant's advice, were deducted on the
corporation's returns and treated on the corporation's
accounting records as reducing the receivable. The
parties have agreed that the corporation is not
entitled to deduct the legal defense fees and that L is

entitled to deduct them on his personal returns as
Schedule C expenses.

Held, the reduction of the receivable on the
corporation's books, which reduced L's debt to the
corporation and increased his net worth in a
corresponding amount, is a constructive dividend to L.


Alan L. Billings, for petitioners.

J. Paul Knap and George W. Bezold, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


BEGHE, Judge: Respondent determined that petitioners Robert
A. and Mary J. Lechner (Lechners) and Midwest Stainless, Inc.
(Stainless), had the following Federal income tax deficiencies:

| Petitioners | Taxable years | Deficiencies |
|---|---|---|
| Lechners | | |
| | 1994 | $128 |
| | 1995 | 24,184 |
| Stainless | | |
| | f/y/e Sept. 30, 1994 | $159,362 |
| | f/y/e Sept. 30, 1995 | 19,956 |

Stainless has conceded, among other things, that respondent
properly disallowed a deduction claimed by Stainless for its
reduction of a debt owed by Mr. Lechner, its sole shareholder, in
reimbursement of his payments of legal fees incurred in defending
against his indictment for filing false individual income tax
returns; respondent has conceded that Mr. Lechner was entitled to
deduct those fees, which he did not claim on his individual

returns. The sole issue remaining for decision is whether Mr. Lechner's debt to Stainless was actually reduced so as to be included in his gross income as a constructive dividend. We hold that Mr. Lechner's debt to Stainless was reduced in such circumstances as to require the reduction to be so included.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of fact and accompanying exhibits are incorporated herein by this reference. The Lechners are husband and wife. At the time the petition was filed, the Lechners resided and Stainless had its principal office at Menomonie, Wisconsin.

Mr. Lechner owned and operated a stainless steel fabricating business known as Midwest Stainless Mechanical Contractors as a sole proprietorship (the sole proprietorship) for 8 or more years, ending on May 31, 1993.

Stainless was incorporated on June 1, 1993, in a section 351[1] exchange of the assets of the sole proprietorship for stock of Stainless. At all times thereafter, Mr. Lechner has been the sole shareholder of Stainless.

_____

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1993-1995, and all Rule References are to the Tax Court Rules of Practice and Procedure.

Mr. Lechner filed an individual income tax return for 1993, and Stainless filed a corporation income tax return for the fiscal year ended September 30, 1993. Attached to each of those returns was a statement regarding the organization of Stainless in a section 351 exchange. This statement recited that all assets of the sole proprietorship, including "cash accounts and other receivables", were transferred to Stainless in exchange for its common stock, but that the "only liability assumed was withheld payroll taxes".

The sole proprietorship and Stainless during the taxable years in issue used the cash method of accounting for income tax purposes without objection from respondent.

Mr. Lechner incurred $239,594.68 of debt to Stainless by depositing in his personal bank account gross receipts of Stainless attributable to payments, after May 31, 1993, for jobs in progress of the sole proprietorship. On June 30, 1993, Stainless accounted for the deposit by making a journal entry (designated "Receivable from Officer") in its accounting records showing that Mr. Lechner owed Stainless the amount deposited in his personal account. No promissory notes were ever made representing this debt, and no interest was charged on this debt. After June 1, 1993, Mr. Lechner also made payments with funds from his personal bank account of expenses related to the jobs in progress, and those payments reduced his outstanding debt to

Stainless. In so handling the receipts and expenses after June 1, 1993, Mr. Lechner was acting in accordance with the advice of his certified public accountant, Kenneth E. Noble (Mr. Noble), who also acted as a bookkeeper of Stainless and made the journal entry described above. Mr. Noble believed that this was the appropriate way to handle the receivables receipts and the payables payments with respect to the jobs in progress because Mr. Lechner had closed out the checking account of the sole proprietorship and had opened a corporate checking account for Stainless with an initial balance of only $5,000.

The Lechners filed joint individual income tax returns (Forms 1040) for the years 1987, 1988, 1989, and 1990. Each of these individual returns included a Schedule C, Profit or Loss from Business, for the sole proprietorship.

Mr. Lechner was indicted under section 7206(1) for filing false individual income tax returns (Forms 1040) for the years 1987, 1988, 1989, and 1990. The principal false item alleged in the indictment was the failure to report all gross receipts of the sole proprietorship. Mr. Lechner pleaded guilty to and was convicted under section 7206(1) of filing a false individual income tax return for the year 1990.

Mr. Lechner was never charged with any criminal offense in connection with the corporation income tax returns of Stainless. The effect of the creation of the Receivable from Officer account

was to treat the $239,594.68 as revenue of Stainless, which reported it as such for corporation income tax purposes. The payments of the expenses by Mr. Lechner were treated as reducing the receivable and were reported by Stainless as deductible expenses for corporation income tax purposes.

In defending himself in the criminal tax case, Mr. Lechner paid $134,108.54 between October 1, 1993, and September 30, 1994, to his attorneys (hereinafter "defense fees"). The defense fees were paid from Mr. Lechner's individual resources and not from funds of Stainless. After Mr. Lechner paid the defense fees, Stainless deducted them on its corporation income tax return for the fiscal year ended September 30, 1994.

Stainless did not reimburse Mr. Lechner in cash or by check or in goods or services for his payments of the defense fees. However, Stainless reduced the debt owed to it by Mr. Lechner in the amount of the defense fees and made a journal entry in its books of account to reflect the reduction, in the same way that it reduced the debt owed by Mr. Lechner to reflect his payments of expenses attributable to jobs in progress of the sole proprietorship. The entry showed a reduction of $134,108.54 in the amount of debt Mr. Lechner owed Stainless for "corporate legal fees paid personally" for the corporate fiscal year ended September 30, 1994. The $134,108.54 debt reduction included

$26,702.80 personally paid by Mr. Lechner for defense fees in calendar year 1993 and $107,405.74 so paid in calendar year 1994.

In the notice of deficiency issued to the Lechners for 1994, respondent added $113,495.00 to Mr. Lechner's individual dividend income. This amount reflects the $107,405.74 reduction during 1994 of Mr. Lechner's debt to Stainless referred to above, and $6,089.19 for other personal accounting and legal fees of Mr. Lechner actually paid by Stainless in 1994. The parties agree that the $6,089.19 referred to above is a constructive dividend that should have been reported on the Lechners' 1994 joint individual tax return.

## ULTIMATE FINDING OF FACT

In 1994 Mr. Lechner received an additional $107,405.74 in gross income from Stainless as a constructive dividend that took the form of a debt reduction.

## OPINION

The apparent clarity and simplicity of the findings set forth above is belied by some missing links and skewed by one of respondent's concessions, which might be considered overly generous (although not the one respondent has in mind).[2]

---

[2] The concession of respondent that respondent asserts on brief might have been overly generous is respondent's concession that Mr. Lechner is entitled to a Schedule C deduction for his payment of the defense fees in his criminal case. The concession
(continued...)

Nevertheless, we wish to encourage parties in this Court to stipulate facts to the greatest extent possible and to make mutual concessions that will simplify and shorten trials. We will do the best we can with the record at hand to supply the missing links and to make inferences that properly give effect to the parties' stipulations and concessions.

The factual setting in the cases at hand, as well as the overall issues raised by the deficiency notices, are similar to those we recently considered in <u>Hood v. Commissioner</u>, 115 T.C. _____ (Aug. 25, 2000) (Court reviewed); see also <u>Jack's Maintenance Contractors, Inc. v. Commissioner</u>, 703 F.2d 154 (5th Cir. 1983), revg. per curiam T.C. Memo. 1981-349. Here, however, the parties' concessions leave only one issue to be decided.

Here, as in <u>Hood</u> and <u>Jack's Maintenance Contractors</u>, an individual who had conducted business as sole proprietor incorporated the business and was thereafter charged with tax crimes in failing to report income of the sole proprietorship. The corporations in <u>Hood</u> and <u>Jack's Maintenance Contractors</u> paid the legal fees incurred by their individual shareholders in

---

² (...continued)
that the Court thinks might have been overly generous is respondent's concession that the corporation's book entry setting up the receivable of $239,594.68 evidenced a valid debt of Mr. Lechner to Stainless. It's a close call, which we have accepted for the purpose of deciding the case at hand as the parties have presented it.

defending against the criminal charges and claimed the payments as deductions on their corporation income tax returns.  In the case at hand, Mr. Lechner paid his own defense fees, but claimed no deductions for the payments on his joint returns.  Instead, Stainless made a journal entry on its accounting records showing that Mr. Lechner's acknowledged debt to Stainless was reduced by the amount of the defense fees, and Stainless deducted that amount on its corporation income tax returns.

Respondent's deficiency notices disallowed the deduction claimed by Stainless and treated the corresponding debt reduction shown on its books of account as constructive dividend income to Mr. Lechner.[3]  Stainless has conceded that it is not entitled to the deduction claimed on its return for the fiscal year ended September 30, 1994, and respondent has conceded that the Lechners are entitled to deductions in corresponding amounts--which they did not claim--on their individual income tax returns for the years in which the fees were paid.

Mr. Lechner deposited to his own account $239,595 of receipts that were attributable to work in progress of the sole proprietorship as of the moment of incorporation.  Against the background of the criminal charges against Mr. Lechner for

---

[3] There is no dispute that at all relevant times Stainless had sufficient earnings and profits to cover any constructive dividend that might be determined.

failing to report taxable income of the sole proprietorship for prior years, the parties took pains to agree and to assure the Court that there was nothing improper in Mr. Lechner's taking the receipts and paying the associated expenses. We accept their assurances and impute no wrongdoing to Mr. Lechner, who appears merely to have been following the advice of his accountant, Mr. Noble, at all times relevant to these proceedings.

What Mr. Lechner and Stainless did to "make it right", apparently on the assumption that the only proper way to handle the incorporation was for Stainless to take over the receivables and payables arising from the sole proprietorship's work in progress, was to set up a corporate receivable from Mr. Lechner in the amount of the receipts and to reduce that receivable when Mr. Lechner paid the associated expenses. The amount of the receivable, reflected in the progress payments taken by Mr. Lechner, and its reduction by the associated expenses that he paid, were reported by Stainless as corporate income and expense.[4]

---

[4] Inasmuch as both the sole proprietorship and the corporation used the cash method of accounting, this treatment appears to have been proper and consistent with the way the incorporation of a cash basis business can be handled under secs. 351, 357(c), and 358(d). See Hempt Bros., Inc. v. United States, 490 F.2d 1172 (3d Cir. 1974); Rev. Rul. 80-198, 1980-2 C.B. 113; see also Focht v. Commissioner, 68 T.C. 223 (1977); Rev. Rul. 80-199, 1980-2 C.B. 122. Notwithstanding that the sole proprietorship earned the receipts and incurred the liabilities
(continued...)

The parties have stipulated that the journal entry evidenced the receivable as valid debt of Mr. Lechner to Stainless.[5] Although in many cases we have found that corporate accounting entries setting up a receivable from a shareholder were equivocal and insufficient to create valid debt, particularly in the absence of an accompanying note and interest payments, see, e.g., Haber v. Commissioner, 52 T.C. 255, 266 (1969), affd. 422 F.2d 198 (5th Cir. 1970), the pattern of repayments and reductions of the receivable, evidenced by Mr. Lechner's payment of the liabilities for the associated expenses, supports the treatment

---

[4](...continued)
to make the payments, the transferee corporation, if it also uses the cash method, is treated as a successor and allowed to report the receipts and payments on its own income tax return if the receivables and payables were transferred to it in the sec. 351 exchange. However, there is no intimation in the foregoing authorities that the receivables and payables must be so transferred; an acceptable alternative would be for the transferor to retain and collect and pay the respective receivables and payables and to use the new corporation to make a "fresh start" with new business. We treat as of no account the discrepancy between the recital in the sec. 351 statement that the only liability assumed by Stainless was withheld payroll taxes and its claiming of Mr. Lechner's payments of liabilities related to the work in progress as its deductible expenses.

[5] If the journal entry had not been so stipulated, Mr. Lechner's taking of the corporate receipts would have been treated as a constructive distribution to him in 1993, taxable as a dividend to the extent of corporate earnings and profits for the corporate fiscal year in which it occurred, and his payments of the expenses would have been treated as capital contributions to Stainless.

of the receivable as valid debt.  We have accepted the parties'
stipulation to this effect.

With his accountant's advice, Mr. Lechner and Stainless
treated his payments of his defense fees as payments of
corporate expenses that reduced the receivable.  Respondent and
petitioners have agreed and made mutual concessions to the
effect, first, that the corporate deduction of the defense fees
is to be disallowed, contributing to a corporation income tax
deficiency, and, second, that Mr. Lechner is to be allowed a
Schedule C deduction in a corresponding amount, although he did
not claim a deduction for the defense fees on his income tax
returns.  Although respondent characterizes his concession as
perhaps overly generous, it is identical to the Commissioner's
concession in Hood v. Commissioner, supra, and appears to us to
be appropriate.  However, this concession of the unclaimed
Schedule C deduction to Mr. Lechner will give him a personal tax
windfall unless his individual deduction is offset by a
constructive dividend in the amount of the debt reduction
evidenced by the corporate accounting entry reducing the
Stainless receivable from Mr. Lechner.

As this Court has recited numerous times, see, e.g., Halpern
v. Commissioner, T.C. Memo. 1982-31, the test for a constructive
dividend has two prongs:  First, the corporation must have
conferred an economic benefit on the shareholder without

expectation of repayment, see <u>Magnon v. Commissioner</u>, 73 T.C. 980, 983-994 (1980), and second, the benefit conferred by the corporation must primarily advance the shareholder's personal interest as opposed to the business interest of the corporation, see <u>Jack's Maintenance Contractors, Inc. v. Commissioner</u>, 703 F.2d at 156.

Whether the corporate journal entry reducing the debt reflected by the Receivable from Officer account resulted in a constructive dividend to Mr. Lechner, the individual shareholder, does not turn on whether the reduction primarily benefited the corporation or the shareholder; this is the second prong question addressed by <u>Hood</u> and <u>Jack's Maintenance Contractors</u>. Stainless has conceded that it is not entitled to the deduction, and thus that it received no primary benefit, or at least that any benefit that it might have received is to be disregarded for tax purposes. Our sole question for decision is a first prong question: Whether the action by Stainless in reducing the amount of the debt on its accounting records conferred an economic benefit on Mr. Lechner without expectation of repayment that constituted or evidenced a distribution to him or for his benefit that should be treated as a constructive dividend.

Respondent's briefs characterize the distribution as cancellation of indebtedness. Because the deficiency notice did not mention cancellation of indebtedness, petitioners argue that

respondent has raised a new issue. This argument has no merit. Cancellation of indebtedness takes its tax significance from the context in which it occurs; cancellation of indebtedness is just a means by which a benefit can be conferred or a constructive payment made. See OKC Corp. & Subs. v. Commissioner, 82 T.C. 638, 647-648 (1984). When a corporation with earnings and profits cancels its shareholder's debt to it, cancellation of indebtedness is the means by which a constructive dividend distribution to the shareholder can be accomplished. See Haber v. Commissioner, supra; Schneller v. Commissioner, T.C. Memo. 1996-62, affd. without published opinion 129 F.3d 1265 (6th Cir. 1997); Estate of Shapiro v. Commissioner, T.C. Memo. 1987-126; Shephard v. Commissioner, T.C. Memo. 1963-294, affd. per curiam 340 F. 2d 27 (6th Cir. 1965).

The notions of constructive dividend and cancellation of indebtedness merge in their common elements: the conferring of an economic benefit without expectation of repayment, which constitutes the first prong of a constructive dividend, with the existence of a debt and its discharge, see Waterhouse v. Commissioner, T.C. Memo. 1994-467, which occurs when it becomes clear that the debt will not have to be repaid, see Cozzi v. Commissioner, 88 T.C. 435 (1987). The inquiry requires a practical assessment of the facts relating to the likelihood of repayment, see id., as they existed at the time the transaction

under review occurred; i.e., at the time of the entry on the corporate books reducing the debt.

Petitioners make two arguments.  With respect to economic benefit, they argue that treating the accounting entry reducing Mr. Lechner's debt to Stainless as a constructive dividend would give dispositive effect to "bookkeeping subtleties", of the sort we deemed "irrelevant" in Halpern v. Commissioner, supra.[6] Petitioners assert the need to show an actual corporate payment or other outlay to justify a finding that Mr. Lechner received a constructive dividend distribution.

---

[6] We observe that the Court in Halpern v. Commissioner, T.C. Memo. 1982-31, made the comment about "accounting subtleties" in rejecting an individual shareholder's argument that corporate bookkeeping entries treating as loans advances to him for travel and entertainment expenses that he never substantiated or repaid should not be treated as dividends to him:

> Halpern contends that the corporation's method of recording its expenses should not cause the corporation's payment of a legitimate business expense to result in a constructive dividend to petitioner.  We feel, however, that such bookkeeping subtleties are irrelevant.  The question is whether Halpern used the amount advanced for his personal benefit or for the benefit of the corporation.
>
> *     *     *     *     *     *     *
>
> Without evidence that these expenses were for the benefit of his corporation, we hold that its payment of these expenses resulted in Halpern's receiving constructive dividends in the amount of $6,706.06. [Halpern v. Commissioner, T.C. Memo. 1982-31, 43 T.C.M. (CCH) 346, 352, 1982 T.C.M. (RIA) par. 82,031, at 104-82.]

With respect to the likelihood of repayment, petitioners' argument seems to be that the accounting entry reducing the receivable is equivocal, and that it doesn't have the effect of a payment or distribution because it might be reversed. Mr. Noble testified that if respondent's dividend determination is not sustained by the Court, that is, if petitioner wins his case, the receivables ledger of Stainless will be adjusted to add back the amount by which the Receivable from Officer account was reduced to reflect Mr. Lechner's payment of his defense fees, which--Mr. Noble originally advised--should be treated as corporate expenses.

Petitioners' argument that a constructive dividend distribution requires corporate payment or outlay of funds also has no merit. It ignores the circumstances in which the original debt was created. When Mr. Lechner deposited in his personal bank account receipts that--the parties agree--belonged to the corporation, he received payments of corporate funds that would have been includable in his gross income (or at least treated as corporate distributions to him at that earlier time) but for Mr. Noble's corporate journal entry creating the receivable that treated the receipts as giving rise to what--the parties also agree--thereby became valid debt. Because the original payment to Mr. Lechner was offset by the debt, there was no increase in his net worth and no distribution supporting a dividend to him at

the earlier time.  When the debt was reduced in circumstances that the parties now agree did not include a repayment of the debt by Mr. Lechner, his net worth correspondingly increased. This increase in his net worth, which results from the reduction of his indebtedness to the corporation, see sec. 61(a)(12), is the economic benefit that satisfies the first prong of the constructive dividend test.

Petitioners' second argument is based on what they assert is the equivocal nature of the book entry reducing the receivable. The creation of the debt in this case, whose existence and intention to repay at inception the parties acknowledge, was evidenced only by a journal entry on the corporate books.  We find that the subsequent reduction of the receivable by journal entry evidenced, pro tanto, the intention not to repay.

We acknowledge that this is not an open and shut proposition.  Accounting entries can be equivocal, as we have held numerous times in finding that accounting entries purporting to create a corporate receivable from a shareholder did not persuade us that valid debt had been created.  See, e.g., Haber v. Commissioner, 52 T.C. at 266.  Respondent has requested the Court to find that "Lechner understood that the debt had been reduced and he believed that he need not pay it".  Petitioners' requests for findings stress that the journal entries on the corporate books of account reducing the account receivable were

made by Mr. Noble, the accountant for Stainless and Mr. Lechner, "consistent with Mr. Noble's handling of similar items in his practice for the last thirty (30) years and was consistent with standard and accepted accounting practice".  Mr. Lechner disputes the irrevocability of the reduction of the receivable, relying on Mr. Noble's testimony that if the Court upholds Mr. Lechner's position, the debt will be restored on the corporate books by an adjusting entry.

We have concluded that Mr. Lechner's state of mind, whatever it may been, is not determinative.  A case such as this should be decided by recourse to objective facts and circumstances, see Dean v. Commissioner, 57 T.C. 32, 43-44 (1971), with due regard for the desirability of consistency in the dealings between shareholders and the closely held corporations that they control.

We are not persuaded by Mr. Noble's testimony--that the receivable will be adjusted upward if the Court upholds Mr. Lechner's position--that the reduction of the receivable on the corporate books was not a corporate dividend distribution to Mr. Lechner.  Mr Noble's testimony flies in the face of the parties' stipulation that the book entry reducing the receivable reduced the debt.[7]

---

[7] Petitioners' offer, embodied in Mr. Noble's testimony, which petitioners adopted on brief, seems counterintuitive.  One would think that if the Court were to hold that the debt
(continued...)

In further response to petitioners' argument based on Mr. Noble's testimony, we would observe that our acceptance of this argument would compromise the integrity of corporate books and records as evidence of corporate action by encouraging "wait and see" game playing. Notwithstanding that all corporate action taken in this case was at the direction and advice of Mr. Noble, we have only his after-the-fact testimony about the corporate action that will be taken in response to a decision of the Court that treats the reduction of the liability as a nullity. There was no preexisting binding agreement between Mr. Lechner and Stainless regarding the circumstances, if any, in which the reduction of the debt on the corporate books would be reversed.[8]

---

[7](...continued)
reduction created no constructive dividend to Mr. Lechner, he and Stainless would be content to leave well enough alone by not undoing the reduction of the receivable. The offer implies that the reduction did increase Mr. Lechner's net worth and that a retroactive restoration of the receivable would be necessary to prevent the increase from having occurred. If the issue before the Court had not been raised by respondent's deficiency notice to Mr. Lechner, there is no reason to believe that Mr. Lechner would have voluntarily caused Stainless to restore the receivable. Nor is there any procedure that we know of (or would be interested in exploring) under which a decision in Mr. Lechner's favor could be conditioned on the restoration of the receivable. In these circumstances, we accept and take at face value the stipulation of the parties that the receivable was reduced in an amount equal to the legal defense fees paid by Mr. Lechner.

[8] Only if the shareholder-employee enters into a binding repayment agreement with his corporation, prior to the time of its payment to the employee for which the corporation claims a
(continued...)

In the circumstances of this case, we are loath to impute such an agreement.  We also doubt that such an agreement, even if it occurred and was formally binding, would change the result generated by giving effect at face value to the corporate book entry reducing the receivable.  Cf. Harwood v. Commissioner, 82 T.C. 239 (1984).

We conclude that in 1994 Mr. Lechner received an additional $107,405.74 in gross income from Stainless as a constructive dividend that took the form of a debt reduction, which was evidenced by the journal entry reducing the Receivable from Officer account in the books and records of Stainless.

To reflect the foregoing and the concessions of the parties,

Decision will be

entered under Rule 155.

---

[8](...continued) deduction, will a  repayment by the employee of an amount disallowed as a corporate deduction, be allowed as a deduction of the amount previously included in his gross income.  See Pahl v. Commissioner, 67 T.C. 286 (1976); Oswald v. Commissioner, 49 T.C. 645 (1968); Rev. Rul. 69-115, 1969-1 C.B. 50.