**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-36

UNITED STATES TAX COURT

JANA RENEA HENSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3205-11S.                          Filed April 16, 2014.

Jana Renea Henson, pro se.

<u>Beth A. Nunnink</u>, for respondent.

SUMMARY OPINION

THORNTON, <u>Chief Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]All other section references are to the Internal Revenue Code (Code) in

(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in petitioner's 2007 and 2008 Federal income tax of $24,712 and $2,019, respectively. Respondent further determined penalties pursuant to section 6662(a) of $4,942 and $404 for tax years 2007 and 2008, respectively.

After the parties' concessions, which are discussed more fully below, the issues for decision are: (1) whether petitioner underreported gross receipts from her cellular telephone business; (2) whether petitioner is entitled to deductions for returns and allowances greater than respondent has allowed; (3) whether petitioner had alimony income in 2007; and (4) whether petitioner is liable for the accuracy-related penalty pursuant to section 6662(a) for her 2007 tax year.

## Background

The parties have stipulated some facts, which we find accordingly. When she petitioned the Court, petitioner resided in Kentucky.

---

[1](...continued)
effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts have been rounded to the nearest dollar.

Petitioner's Divorce

Petitioner and Michael Henson married on September 12, 1987, and separated on April 30, 2004.

On July 27, 2006, petitioner and Mr. Henson entered into a "Settlement Agreement and Judgment" (settlement agreement) to conclude their divorce proceedings. In the settlement agreement Mr. Henson agreed to pay petitioner $200,000 of "equalization of property" payments in three separate installments: $100,000 within 60 days of the date of the execution of the divorce settlement agreement; $50,000 by December 31, 2006; and $50,000 by June 30, 2007.

Also in the settlement agreement Mr. Henson agreed to pay petitioner $420,000 of maintenance payments, to be paid in installments of $5,000 per month for 60 months, beginning July 1, 2006, and then $2,500 per month for the next 48 months. The maintenance payments would terminate upon petitioner's death or cohabitation or remarriage. The settlement agreement did not address the tax treatment of the maintenance payments for either petitioner or Mr. Henson.

In January 2007 petitioner received from Mr. Henson the $50,000 equalization of property payment that was due by December 31, 2006, and

deposited it into her bank account ending in 4077.[2] From January through October of 2007 Mr. Henson made a $5,000-per-month maintenance payment to petitioner --for a total of $50,000--but failed to make any payment in November or December 2007. In early 2008 petitioner filed suit in a Tennessee State court against Mr. Henson for his failure to make the required maintenance payments in November and December 2007 pursuant to the settlement agreement.

Petitioner's Cellular Telephone Business

In 2006 petitioner invested funds that she received from the settlement agreement in Disney Mobile Kidz Talk Too (petitioner's business), a business which generated income through sales of cellular telephones, cellular accessories, and cellular telephone contracts. A former friend of petitioner's ran and operated petitioner's cellular telephone business, and petitioner was not involved in the day-to-day operations of this business.

As part of its business agreement with cellular telephone companies, petitioner's business would often receive advances or commissions for signing up new customers. She deposited these advances or commissions variously into three bank accounts with account numbers ending in 6087, 4077, and 5929, over which

---

[2]The record does not show whether petitioner received the additional $50,000 equalization of property payment due to her by June 30, 2007.

she had control. If the new customers failed to fulfill and complete their contracts, petitioner's business was required to repay the cellular telephone companies portions of the advances or commissions.

Petitioner's business ultimately proved unsuccessful, and in 2008 she filed for bankruptcy.

Petitioner's Bank Deposits

During 2007 and 2008 petitioner deposited income she received from her business into three bank accounts. In 2007 she deposited $22,466, $108,609, and $216,737 into her 6087, 4077, and 5929 bank accounts, respectively.[3] In 2008 she deposited $28,758 and $26,701 into her 4077 and 5929 bank accounts, respectively.

Petitioner's Tax Returns

Petitioner timely filed her 2007 and 2008 Federal income tax returns. On Schedules C, Profit or Loss From Business (Sole Proprietorship), attached to those returns, she reported gross receipts of $50,254 for 2007 and $7,286 for 2008. She reported no deductions for returns and allowances. On her 2007 return petitioner also reported as taxable income $50,000 of alimony received.

---

[3]Respondent's notice of deficiency, discussed infra, determined that petitioner had $108,086 of total deposits into her 4077 account in 2007. Petitioner has stipulated, however, that she deposited $108,609 into this account in 2007.

Respondent's Determinations

Respondent selected petitioner's 2007 and 2008 income tax returns for examination. Because petitioner was unable to provide records with respect to her business, respondent's examining agent used petitioner's 6087, 4077, and 5929 bank account statements to reconstruct her income. Respondent's agent determined petitioner's gross receipts for the years in issue by adding up deposits to these accounts and then subtracting the deposits that he was able to identify as nontaxable, such as loan proceeds, equalization of property payments, and transfers from petitioner's other bank accounts.[4] The following tables summarize respondent's determinations:

### 2007 Taxable Year

| Account No. | Total deposits | Taxable deposits | Nontaxable deposits |
| --- | --- | --- | --- |
| 6087 | $22,466 | $2,466 | $20,000 |
| 4077 | 108,085 | 48,422 | 59,663 |
| 5929 | 216,737 | 181,682 | 35,055 |
| Total | 347,288 | 232,570 | 114,718 |

---

[4]In arriving at his determination that petitioner had failed to report $132,316 in taxable income on her 2007 return, respondent's examining agent did not include the $50,000 in maintenance payments petitioner had self-reported on her return or the $50,000 in equalization of property payments petitioner received in January 2007 that were deposited into her bank account ending in 4077.

2008 Taxable Year

| Account No. | Total deposits | Taxable deposits | Nontaxable deposits |
|---|---|---|---|
| 6087 | --- | --- | --- |
| 4077 | $28,758 | $23,480 | $5,278 |
| 5929 | 26,701 | 17,170 | 9,531 |
| Total | 55,459 | 40,650 | 14,809 |

In the notice of deficiency respondent determined that petitioner had unreported taxable receipts of $132,316 for 2007 and $18,307 for 2008. The notice of deficiency shows that for 2007 respondent calculated the $132,316 of taxable receipts on the basis of $232,570 of deposits minus $50,000 in alimony that petitioner reported on her 2007 return and minus $50,254 of gross receipts that petitioner reported on her Schedule C. The notice of deficiency does not show how respondent determined the $18,307 of unreported taxable receipts for 2008.

The amounts of deposits remaining in dispute after the parties' stipulations and concessions are summarized below:

2007 Taxable Year

| Account No. | Total deposits | Agreed taxable | Agreed nontaxable | Remaining in dispute |
|---|---|---|---|---|
| 6087 | $22,466 | $2,466 | $20,000 | --- |
| 4077 | 108,609 | 48,667 | 59,655 | $287 |
| 5929 | 216,737 | 108,830 | 38,302 | 69,605 |
| Total | 347,812 | 159,963 | 117,957 | 69,892 |

2008 Taxable Year

| Account No. | Total deposits | Agreed taxable | Agreed nontaxable | Remaining in dispute |
|---|---|---|---|---|
| 6087 | --- | --- | --- | --- |
| 4077 | $28,758 | $15,260 | $11,098 | $2,400 |
| 5929 | 26,701 | 10,121 | 13,331 | 3,249 |
| Total | 55,459 | 25,381 | 24,429 | 5,649 |

Discussion

A. Burden of Proof

The burden of proof is generally upon the taxpayer, except as may be otherwise provided by statute or determined by the Court. See Rule 142(a).[5] The Court of Appeals for the Sixth Circuit, to which an appeal of this case would ordinarily lie if this case were appealable, has held that the Commissioner's determination of unreported income must be based on a "minimal evidentiary

---

[5]Petitioner has not claimed and the record does not indicate that sec. 7491(a) applies to shift the burden of proof to respondent with respect to any factual issue.

foundation" linking the taxpayer to the tax-generating activity or the receipt of funds in order for the presumption of correctness to attach. United States v. Walton, 909 F.2d 915, 919 (6th Cir. 1990); see also Richardson v. Commissioner, T.C. Memo. 2006-69, aff'd, 509 F.3d 736 (6th Cir. 2007). Once the Commissioner meets his initial burden of production, taxpayers bear the "burden of producing credible evidence that they did not earn the taxable income attributed to them or of presenting an argument that the IRS deficiency calculations were not grounded on a minimal evidentiary foundation." Walton, 909 F.2d at 919; see also Olmos v. Commissioner, T.C. Memo. 2007-82.

The parties' stipulations establish the requisite evidentiary foundation with respect to the unreported income.

B. Schedule C Gross Receipts

Section 61(a) provides that gross income includes "all income from whatever source derived", including gross income derived from business. Generally, cash basis taxpayers are required to recognize the amount of an item of gross income in the taxable year in which they receive it. Sec. 451(a). Taxpayers are required to maintain books and records that are sufficient to enable the Commissioner to determine their gross income and their correct tax liability. Sec. 1.6001-1(a), Income Tax Regs.

If a taxpayer fails to keep adequate records, the Commissioner may reconstruct the taxpayer's income by any reasonable method that clearly reflects income. Sec. 446(b); see Holland v. United States, 348 U.S. 121, 130-132 (1954). One acceptable method is the bank deposits method. Clayton v. Commissioner, 102 T.C. 632, 645 (1994); DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992); Bevan v. Commissioner, T.C. Memo. 1971-312, aff'd, 472 F.2d 1381 (6th Cir. 1973). This method assumes that if a taxpayer is engaged in an income-producing activity and makes deposits to bank accounts, then those deposits, less amounts identified as nontaxable items, constitute taxable income. See Clayton v. Commissioner, 102 T.C. at 645-646. Where the Commissioner has used the bank deposits method to determine deficiencies, the taxpayer generally bears the burden of showing that the bank deposits were derived from nontaxable sources. See DiLeo v. Commissioner, 96 T.C. at 871; Bevan v. Commissioner, T.C. Memo. 1971-312.

After the parties' concessions and stipulations, there remain in dispute only $69,892 of deposits in 2007 and $5,649 of deposits in 2008 (collectively referred to hereinafter as disputed deposits). Petitioner does not deny making the disputed deposits. Rather, she contends that certain of them were from nontaxable sources.

Petitioner contends that certain of the disputed deposits represent nontaxable loan proceeds. Petitioner failed, however, to produce any documentation or other evidence to substantiate this claim.[6] When questioned at trial about certain deposits she claimed were loan proceeds, she was unable to offer any specific details about them. Petitioner has failed to establish what amount, if any, of the disputed deposits represents loan proceeds.

Petitioner also contends that certain of the disputed deposits represent advance payments or commissions and are only "partially taxable" because her business would sometimes have to repay some of these amounts. Petitioner has failed to establish that these advance payments or commissions are nontaxable.

Pursuant to section 61(a) gross income includes "all income from whatever source derived" and includes all "accessions to wealth, clearly realized, and over which * * * [a taxpayer has] complete dominion." Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). Whether a taxpayer enjoys "complete dominion" over an "accession to wealth" depends upon "whether the taxpayer has

---

[6]Petitioner testified that her original records had been "displaced" because she moved three times and that she was unable to procure replacement records from her creditors because of their adverse interests, having been parties to her bankruptcy proceeding. Petitioner's alleged loss of records does not relieve her of the burden of proving the deposits derived from sources that were nontaxable. See Irving v. Commissioner, T.C. Memo. 2006-169; Kelly v. Commissioner, T.C. Memo. 1987-352, aff'd without published opinion, 858 F.2d 743 (11th Cir. 1988).

some guarantee that * * * [the taxpayer] will be allowed to keep the money." Commissioner v. Indianapolis Power & Light Co., 493 U.S. 203, 210 (1990).

The funds in question were deposited into petitioner's various bank accounts and were available for her use at any time without restriction. Apart from petitioner's vague testimony, there is no evidence of the amounts of funds that were returned to the cellular telephone companies and no basis upon which we might reliably estimate the amounts. Petitioner has provided the Court with no evidence that would show the terms of any arrangements between petitioner's business and these cellular telephone companies.

We sustain respondent's determination that the disputed deposits are taxable income to petitioner. See Rutkin v. United States, 343 U.S. 130, 137 (1952); Price v. Commissioner, T.C. Memo. 2004-103 ("Unless the nontaxable nature of deposits is established, gross income includes deposits to bank accounts where the taxpayer has dominion and control of the funds."); Woods v. Commissioner, T.C. Memo. 1989-611, aff'd without published opinion, 929 F.2d 702 (6th Cir. 1991).

C. Schedule C Returns and Allowances

Petitioner argues that she is entitled to deduct allowances on her 2007 and 2008 Schedules C even though she claimed no such deductions on her 2007 and 2008 returns. Respondent has conceded that petitioner is entitled to deduct

$24,288 and $6,223 of returns and allowances on her Schedules C for 2007 and 2008, respectively. Petitioner introduced no evidence to substantiate her claim for deductions for returns and allowances greater than respondent has allowed. Petitioner is not entitled to deductions for returns and allowances greater than respondent has allowed. See Olagunju v. Commissioner, T.C. Memo. 2012-119; Sherrer v. Commissioner, T.C. Memo. 2011-198.

## D. Alimony Received

At trial petitioner asserted that the $50,000 of alimony she reported on her 2007 tax return should be nontaxable. Petitioner argues that her divorce decree "even states that it's not alimony, it's just separating marital property, and * * * [my husband's and my] money."

Generally, property settlements incident to divorce are nontaxable. Sec. 1041; Estate of Goldman v. Commissioner, 112 T.C. 317, 322 (1999), aff'd without published opinion sub. nom. Schutter v. Commissioner, 242 F.3d 390 (10th Cir. 2000). On the other hand, amounts received as alimony or separate maintenance payments are taxable to the recipient. Secs. 61(a)(8), 71(a), 215(a). The phrase "alimony or separate maintenance payment" is defined in section 71(b)(1) as any cash payment satisfying these four requirements:

(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Petitioner received and reported on her 2007 return $50,000 in payments from Mr. Henson.  On the basis of the evidence in the record, we have found that petitioner received $50,000 in maintenance payments in 2007.  After all, her lawsuit in State court was predicated on Mr. Henson's failing to make only 2 monthly maintenance payments in 2007, from which we infer that he did in fact make the other 10 monthly maintenance payments, totaling $50,000 as reported on petitioner's 2007 return.

The settlement agreement does not designate the maintenance payments as not includible in petitioner's gross income and not allowable as a deduction to Mr. Henson; petitioner and Mr. Henson were not members of the same household at

the time the payments were made; and under the settlement agreement, Mr. Henson does not have to make any additional maintenance payments to petitioner after her death. On the record before us, we hold, consistent with petitioner's reporting position on her 2007 return, that the $50,000 she received from Mr. Henson in 2007 was alimony and taxable pursuant to section 71.

E. Accuracy-Related Penalties

Respondent contends that petitioner is liable for an accuracy-related penalty for her 2007 tax year.[7] Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any portion of a tax underpayment that is attributable to, among other things, negligence. "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code and also includes any failure to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.

Under section 7491(c), the Commissioner bears the burden of production with respect to the section 6662(a) penalty. Generally, this means he must come forward with sufficient evidence indicating that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Respondent has

---

[7]Respondent concedes that petitioner is not liable for the sec. 6662 accuracy-related penalty for her 2008 tax year.

met this burden of production because he has provided evidence that for petitioner's 2007 tax year she failed to comply with recordkeeping requirements and failed to substantiate certain items on her tax return.

The accuracy-related penalty does not apply with respect to any portion of an underpayment if it is shown that the taxpayer had reasonable cause and acted in good faith. Sec. 6664(c)(1). The burden of proof is on the taxpayer to establish reasonable cause. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-448; Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972).

Petitioner testified that she relied on a certified public accountant (C.P.A.) to complete her income tax returns. Reliance on a professional tax adviser's advice may demonstrate reasonable cause and good faith if, taking into account all the facts and circumstances, the reliance was reasonable and the taxpayer acted in good faith. Sec. 1.6664-4(b)(1), (c)(1), Income Tax Regs. Reliance on a tax adviser may be reasonable and in good faith if the taxpayer establishes: (1) the adviser was a competent professional with sufficient expertise to justify reliance; (2) the taxpayer provided necessary and accurate information; and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Petitioner conceded that she "never really looked" at her tax returns and that the only involvement that she had in the tax return preparation process was to "take stuff down" to her C.P.A.  Moreover, petitioner testified that the figures her C.P.A. used in preparing her returns were derived from QuickBooks printouts that she provided to her C.P.A.  Petitioner has failed to show that she provided her C.P.A. necessary and accurate information or that she reasonably and in good faith relied on her tax adviser.  We sustain respondent's determination to impose the section 6662(a) accuracy-related penalty for negligence for petitioner's 2007 tax year.  See Schneller v. Commissioner, 129 F.3d 1265 (6th Cir. 1997), aff'g without published opinion T.C. Memo. 1996-62.

To reflect the foregoing and the parties' concessions,

Decision will be entered

under Rule 155.